

Hiscox Insurance Company Inc.

# Your Insurance Documents

Enclosed you will find the policy documents that make up your insurance contract with us.

Please read through all of these documents. If you have any questions or need to update any of your information please call us at (Mon-Fri, 7am-10pm ET).

## Your insurance documents

**Declarations Page**
This contains specific policy information, such as the limits and deductibles you have selected.

**Policy Wording**
This details the terms and conditions of your coverage, subject to policy endorsements.

**Endorsements**
These documents modify the Policy Wording or Declarations Page. These include relevant terms and conditions as required by your state and are part of your policy.

**Notices**
These documents provide information that may affect your coverage such as optional terrorism coverage (if purchased) and other important items required by your state.

**Application Summary**
This is a summary of the information that you provided to us as part of your application. Please review this document and let us know if any of the information is incorrect.

## Reporting a claim

Please inform us immediately if you have a claim or loss to report. Please have your policy number available, which can be found on the declarations page, so we can handle your call quickly. Contact us via the methods below or file a claim using our online form at https://www.hiscox.com/manage-your-policy/claims-center.

**Email:** reportaclaim@hiscox.com

**Phone:** 866-424-8508

**Mail:**    Hiscox Claims Center
5 Concourse Parkway
Suite 2150
Atlanta, GA 30328

 Hiscox Insurance Company Inc.

**GENERAL TERMS AND CONDITIONS**
**TABLE OF CONTENTS**

I.     Our promise to you……………………………………………………………  1

II.    Limits of liability……………………………………………………………  1

III.   Your obligations to us……………………………………………………… 1 - 2

IV.    Optional extension period ……….……………………………………… 2

V.     Other provisions affecting coverage…………………............................................  3 - 4

VI.    Definitions applicable to all Coverage Parts…………………………………….. 4 – 5



Hiscox Insurance Company Inc.

**CYBER  COVERAGE PART**

**TABLE OF CONTENTS**

I.      Insuring agreement - What is covered ............................................................ 1

II.     Coverage enhancements ............................................................................. 1-2

III.    Who is an insured  ....................................................................................... 2-3

IV.     Defense and settlement of claims ............................................................... 3-4

V.      Your obligations   ………………………….......................................................... 4

VI.     Exclusions – What is not covered ............................................................... 5–9

VII.    Definitions ………………………………………………………………………….. 9–18


VIII.   Other provisions affecting coverage …………………………………………….. 18-21



Hiscox Insurance Company Inc.

**DIGITAL MEDIA LIABILITY  COVERAGE PART**

**TABLE OF CONTENTS**

**I.    Insuring agreement - What is covered**…………………………………………………… 1

**II.   Coverage enhancements** ……………………………………………………………… 1

**III.  Who is an insured**  …………………………………………………………………1-2

**IV.  Defense and settlement of claims** ……………………………………………………2-3

**V.   Your obligations**  …………………………………….....................................................  3

**VI.  Exclusions – What is not covered** ………………………………………………… 3-8

**VII. Definitions** ……………………………………………………………………….. 8-9



# Declarations Page



# HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603
(914) 273-7400

## Cyber and Data Risk Solution

## DECLARATIONS – Effective 11/02/2023 (updates denoted by *) v1

---

**NOTICE: YOUR POLICY CONTAINS CLAIMS-MADE LIABILITY COVERAGE. CLAIMS-MADE COVERAGE APPLIES ONLY TO CLAIMS THAT ARE FIRST MADE DURING THE POLICY PERIOD OR DISCOVERY PERIOD, IF PURCHASED, AND REPORTED IN ACCORDANCE WITH THE TERMS OF THE POLICY.**

**THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIMS EXPENSES. FURTHERMORE, CLAIMS EXPENSES WILL BE APPLIED AGAINST THE RETENTION.**

**In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

**PLEASE READ YOUR POLICY CAREFULLY AND CONSULT YOUR INSURANCE ADVISOR ABOUT ANY QUESTIONS YOU MIGHT HAVE.**

**Policy no.:**  P102.552.460.1
**Renewal of:**

**1. Named insured:**  Balgo Teachnologies LLC
**Address:**  37 N Orange Ave
Ste 608
Orlando, FL 32801

**Email address:**  Balgotechnologies@gmail.com

**2. Policy period:**  **Inception Date: 11/02/2023**          **Expiration Date: 11/02/2024**
Inception date shown shall be at 12:01 A.M. (Standard Time) to Expiration date shown above at 12:01 A.M. (Standard Time) at the address of the Named Insured.

**3. General terms and conditions wording:**  PLP P0001 CW (04/19)
The General terms and conditions apply to this policy in conjunction with the specific wording detailed in each section below.

**4. Policy limits:**  The Cyber (CYE) and Digital Media (MED) limits will be shared, and any payments made under either Coverage Part will reduce the coverage part limits for both Coverage Parts.

Cyber (CYE)  $1,000,000 each claim and/or event /$1,000,000 aggregate

Digital Media (MED)  $1,000,000 each claim /$1,000,000 aggregate

**5. Endorsements:**  See Schedule



**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603
(914) 273-7400

## Cyber and Data Risk Solution

## DECLARATIONS – **Effective 11/02/2023** (updates denoted by *) v1

---

**6. Notification of claims to:**

Hiscox Claims
Web : https://www.hiscox.com/manage-your-policy/claims-center
Phone: 1-866-424-8508
Email: reportaclaim@hiscox.com
Mail: Attn: Direct Claims Hiscox
     5 Concourse Parkway, Suite 2150
     Atlanta GA, 30328

Please inform us immediately if you have a claim or loss to report.

**7. Policy Premium:**
**Premium Allocated to TRIA:**
**State Surcharge:**



**8. Valued added services:** Your CyberClear policy includes a **comprehensive panel of breach response resources,** featuring eRisk Hub® Breach Response Resource and Information Web Portal, powered by NetDiligence®, the industry standard of response and protection. Plus, public relations support, legal services, credit monitoring, extortion protection and more. These resources will help you comply with regulations and protect your reputation, should a breach occur.

For more information, visit https://www.hiscox.com/risk-management-cyber.



# HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603

(914) 273-7400

## Cyber and Data Risk Solution

## DECLARATIONS – Effective 11/02/2023 (updates denoted by *) v1

---

**Cyber Coverage Part: CYBCL-CYB P0001A CW (10/19)**

| | | |
|---|---|---|
| Cyber (CYE): | $1,000,000 each claim and/or event / $1,000,000 aggregate<br>Retention: $ 10,000<br>Waiting Period: 10 hours<br>Retroactive Date: 11/02/2023<br>Period of Restoration: 120 days | |
| Bricking: | $50,000 aggregate (Shared)<br>Retention: $ 10,000 | |
| Cyber Crime:<br>(Funds Transfer Fraud, Social Engineering, and Reverse Social Engineering) | $50,000 aggregate (Shared)<br>Retention: $ 10,000 | |
| Dependent Business Interruption: | NOT COVERED | |
| Dependent System Failure: | NOT COVERED | |
| Enhanced Privacy Regulation: | $100,000 aggregate (Shared)<br>Retention: $ 10,000 | |
| Reputational Harm: | $250,000 aggregate (Shared)<br>Retention: $ 10,000 | |
| System Failure: | $50,000 aggregate (Shared)<br>Retention: $ 10,000<br>Waiting Period: 10 hours | |
| Utility Fraud: | $250,000 aggregate (Shared)<br>Retention: $ 10,000 | |
| **Endorsements:** | | |
| *All limits designated as "shared" are a part of, and not in addition to, the Cyber Limit.* | | |

**Digital Media Liability Coverage Part: CYBCL-MED P0001A CW (04/19)**

| | | |
|---|---|---|
| Digital Media (MED): | $1,000,000 each claim / $1,000,000 aggregate<br>Retention: $ 10,000<br>Retroactive Date: 11/01/2023 | |
| **Endorsements:** | | |



# HISCOX INSURANCE COMPANY INC. (A Stock Company)

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603

(914) 273-7400

## Cyber and Data Risk Solution

## DECLARATIONS – Effective 11/02/2023 (updates denoted by *) v1

---

IN WITNESS WHEREOF, the Insurer indicated above has caused this Policy to be signed by its President and Secretary, but this Policy shall not be effective unless also signed by the Insurer's duly authorized representative.

President

Secretary

Authorized Representative
Kevin Kerridge
11/02/2023
Hiscox Inc.



**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603

(914) 273-7400

## Cyber and Data Risk Solution

**DECLARATIONS** – **Effective 11/02/2023** (updates denoted by *) v1



**HISCOX INSURANCE COMPANY INC. (A Stock Company)**

104 South Michigan Avenue, Suite 600, Chicago, Illinois, 60603
(914) 273-7400

## Cyber and Data Risk Solution

**DECLARATIONS** – **Effective 11/02/2023** (updates denoted by *) v1

---

### Schedule of Endorsements

| NUMBER | TITLE |
|---|---|
| | **GENERAL (APPLICABLE TO MORE THAN ONE COVERAGE PART)** |
| PLP E9241 FL (04/16) | Florida Table Of Contents (GT&C) |
| INT E9995 FL (08/21) | Florida Addendum To The Declarations |
| PLP P0001 CW (04/19) | General Terms and Conditions |
| INT E9999 CW (01/15) | Cap on Losses from Certified Acts of Terrorism |
| WCL E6316 CW (04/19) | Amend Cancellation Provision Endorsement (14 Days Full Refund) |
| WCL E6017 CW (04/19) | Nuclear Incident Exclusion Clause-Liability-Direct (Broad) |
| WCL E6020 CW (09/22) | War, Civil War, Cyberwarfare, and NCBR Exclusion Endorsement |
| WCL E6081 CW (09/15) | State Amendatory Inconsistency |
| PLP E9007 FL (08/21) | Florida Amendatory Endorsement |
| INT N001 CW (01/09) | Economic And Trade Sanctions Policyholder Notice |
| INT N003 CW (01/19) | Policyholder Notice -Electronic Delivery |
| | |
| | **CYBER COVERAGE PART** |
| CYBCL-CYB E9100 FL (04/19) | Florida Table of Contents (CYBER) |
| CYBCL-CYB P0001A CW (10/19) | Cyber Coverage Part |
| CYBCL-CYB E2011 CW (04/19) | Biometric Data Exclusion |
| CYBCL-CYB E2013 CW (04/19) | Blanket Additional Insured Endorsement (Written Contract) |
| CYBCL-CYB E2050 CW (02/20) | Escrow and Title Activities Exclusion |
| CYBCL-CYB E9116 FL (04/19) | Florida Amendatory Endorsement |
| CYBCL-CYB E2051 CW (11/19) | Ransomware Event Sublimit Endorsement ($25,000) |
| CYBCL-CYB E2075 CW (08/23) | Cyber Policy Update Endorsment |
| | |
| | **DIGITAL MEDIA LIABILITY COVERAGE PART** |
| CYBCL-MED E9200 FL (04/19) | Florida Table of Contents (MEDIA) |
| CYBCL-MED P0001A CW (04/19) | Digital Media Liability Coverage Part |
| CYBCL-MED E3004 CW (04/19) | Music Exclusion |
| CYBCL-MED E9216 FL (04/19) | Florida Amendatory Endorsement |
| CYBCL-MED E3007 CW (04/19) | Absolute Opioid Exclusion Endorsement |



# Policy Wording



# General Terms and Conditions

## I. Our promise to you

In consideration of the premium charged, and in reliance on the statements made and information provided to **us**, **we** will pay **covered amounts** as defined in this policy, provided **you** properly notify **us** of **claims**, **breaches**, **events**, or **occurrences**, and meet **your** obligations to **us** in accordance with the terms of this policy.

## II. Limits of liability

Regardless of the number of Coverage Parts **you** have purchased, the maximum **we** will pay for all **covered amounts** will be as follows:

### A. Coverage part limit

Each Coverage Part purchased will be subject to a **coverage part limit** (if one is stated in the Declarations), which is the maximum amount **we** will pay for all **covered amounts** under that Coverage Part, other than coverage enhancements or other items **we** have expressly agreed to pay in addition to the limit. The **coverage part limit** will be in excess of any applicable **retention**.

### B. Each claim limit

The Each Claim Limit identified in the Declarations is the maximum amount **we** will pay for all **covered amounts** for each covered **claim**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **claim** to which the sublimit applies. The Each Claim Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

### C. Each breach limit

The Each Breach Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **breach**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **breach** or costs to which the sublimit applies. The Each Breach Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

### D. Each occurrence limit

The Each Occurrence Limit identified in the Declarations (if **you** have purchased a relevant Coverage Part) is the maximum amount **we** will pay for all **covered amounts** for each covered **occurrence**, unless a lower sublimit is specified, in which case the sublimit is the maximum amount **we** will pay for the type of covered **occurrence** to which the sublimit applies. The Each Occurrence Limit, or any sublimit, will be in excess of any applicable **retention** and will be a part of, and not in addition to, any applicable **coverage part limit**.

### E. General liability coverage part limits

If **you** have purchased a General Liability Coverage Part, additional rules for applying limits are contained in Section IV. Limits of liability, of that Coverage Part.

### F. Related claims

All **related claims**, regardless of when made, will be treated as one **claim**, and all subsequent **related claims** will be deemed to have been made against **you** on the date the first such **claim** was made. If, by operation of this provision, the **claim** is deemed to have been made during any period when **we** insured **you**, it will be subject to only one **retention** and one Each Claim Limit regardless of the number of claimants, **insureds**, or **claims** involved.

## III. Your obligations to us

### A. Named insured responsibilities

It will be the responsibility of the **named insured** (or, if there is more than one **named insured**, the first one listed on the Declarations) to act on behalf of all **insureds** with respect to the following:

1. timely giving and receiving notice of cancellation or non-renewal;

2. timely payment of premium;

3. receipt of return premiums;

4. timely acceptance of changes to this policy; and

5. timely payment of **retentions**.



## General Terms and Conditions

B.  Your duty to cooperate

**You** must cooperate with **us** in the defense, investigation, and settlement of any **claim**, **potential claim**, **breach**, **event**, **occurrence**, or other matter notified to **us**, including but not limited to:

1.  notifying **us** immediately if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers;

2.  submitting to examination and interrogation under oath by **our** representative and giving **us** a signed statement of **your** answers;

3.  attending hearings, depositions, and trials as **we** request;

4.  assisting in securing and giving evidence and obtaining the attendance of witnesses;

5.  providing written statements to **our** representative and meeting with such representative for the purpose of investigation and/or defense;

6.  providing all documents and information **we** may reasonably request, including authorizing **us** to obtain records; and

7.  pursuing **your** right of recovery from others.

C.  Your obligation not to incur any expense or admit liability

**You** must not make any payment, incur any expense, admit any liability, or assume any obligation without **our** prior consent. If **you** do so, it will be at **your** own cost and expense.

D.  Your representations

**You** warrant that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** and were material to **our** decision to issue this policy to **you**. If **we** learn any of the representations or materials were untrue, inaccurate, or misleading in any material respect, **we** are entitled to treat this policy as if it had never existed.

## IV. Optional extension period

1.  If **we** or the **named insured** cancel or non-renew this policy, then the **named insured** will have the right to purchase an optional extension period for the duration and at the percentage of the expiring premium stated in Item 5 of the Declarations. The optional extension period, if purchased, will start on the effective date of cancellation or non-renewal. However, the right to purchase an optional extension period will not apply if:

    a.  this policy is canceled by **us** for nonpayment of premium; or

    b.  the total premium for this policy has not been fully paid.

2.  The optional extension period will apply only to **claims** that:

    a.  are first made against **you** and reported to **us** during the optional extension period; and

    b.  arise from **your professional services** performed, or a **breach**, **data breach**, offense, or **occurrence** that takes place, on or after the **retroactive date** but prior to the effective date of cancellation or non-renewal of this policy.

3.  The additional premium will be fully earned at the inception of the optional extension period.

4.  Notice of election and full payment of the additional premium for the optional extension period must be received by **us** within 30 days after the effective date of cancellation or non-renewal, otherwise any right to purchase the optional extension period will lapse.

The limits of liability applicable during any purchased optional extension period will be the remaining available **coverage part limit**. There will be no separate or additional limit of liability available for any purchased optional extension period.

The right to purchase an optional extension period will apply only to Coverage Parts **you** have purchased that include coverage written on a claims-made or loss occurring and discovered basis, and not to any Coverage Parts written on an occurrence basis.



**General Terms and Conditions**

---

### V. Other provisions affecting coverage

The following provisions apply to all Coverage Parts **you** have purchased. If there is a conflict between any of the provisions here and a provision contained in a Coverage Part, then the provision in the Coverage Part will govern the coverage provided under that Coverage Part.

**A. Alteration and assignment**

No change in, modification of, or assignment of interest under this policy will be effective unless made by written endorsement to this policy signed by **our** authorized representative.

**B. Bankruptcy or insolvency**

**Your** bankruptcy or insolvency will not relieve **us** of any of **our** obligations under this policy.

**C. Cancellation**

1. This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations.

2. This policy may be canceled by **us** by mailing to the **named insured** by registered, certified, or other first class-mail (or by email where allowed by applicable law), at the **named insured's** address (or email address) stated in Item 1 of the Declarations, written notice which must include the date the cancellation will be effective. The effective date of the cancellation will be no less than 60 days after the date of the notice of cancellation, or ten days if the cancellation is due to nonpayment of premium.

3. The mailing (or emailing) of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

4. If this policy is canceled by the **named insured**, **we** will retain the customary short rate proportion of the premium.

5. If this policy is canceled by **us**, **we** will return a pro rata proportion of the premium.

6. Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible.

**D. Change in control**

If, during the **policy period**, the **named insured** consolidates with, merges into, or sells all or substantially all of its assets to any other person or entity, or any other person or entity acquires ownership or control of the **named insured**, then the **named insured** will provide **us** written notice no later than 30 days after the effective date of such change in control, together with any other information **we** may require.

**We** will not cancel this policy solely because of a change in control, but unless **you** and **we** agree in writing otherwise, after the effective date of any change in control, this policy will cover only **claims** arising from **professional services** performed, or **breaches**, **data breaches**, offenses, or **occurrences** that took place, prior to the change in control.

**E. Coverage territory**

This policy will apply to **your professional services** performed, and **breaches**, offenses, **events**, or **occurrences** that take place, anywhere in the world, provided that any action, arbitration, or other proceeding (if **you** have purchased a relevant Coverage Part) is brought within the United States, its territories or possessions, or Canada.

**F. Estates, heirs, legal representatives, spouses, and domestic partners**

In the event of an **employee's** death or disability, this policy will also apply to **claims** brought against the **employee's**:

1. heirs, executors, administrators, trustees in bankruptcy, assignees, and legal representatives; or

2. lawful spouse or lawful domestic partner;

but only:

1. for a covered **claim** arising from the scope of the **employee's** work for **you**; or

2. in connection with their ownership interest in property which the claimant seeks as recovery in a covered **claim** arising from the scope of the **employee's** work for **you**.

**G. False or fraudulent claims**

If any **insured** commits fraud in connection with any **claim**, **potential claim**, **breach**, offense, **event**, or **occurrence**, whether regarding the amount or otherwise, this insurance will become

---

**HISCOX**
**CYBER**CLEAR

## General Terms and Conditions

void as to that **insured** from the date the fraud is committed.

| | | |
|---|---|---|
| H. | Other insurance | Any payment due under this policy is specifically excess of and will not contribute with any other valid and collectible insurance, unless such other insurance is written specifically as excess insurance over this policy. However, if **you** have purchased a General Liability Coverage Part, rules for how that Coverage Part will be treated when there is other valid and collectible insurance are contained in Section V. Other provisions affecting coverage, D. Other insurance, of that Coverage Part. |
| | | If the same **claim** or **related claims**, **breach**, **event** or **related events**, or **occurrence** is covered under more than one Coverage Part, **we** will pay only under one Coverage Part, which will be the Coverage Part that provides the most favorable coverage. |
| I. | Subrogation | In the event of any payment by **us** under this policy, **we** will be subrogated to all of **your** rights of recovery to that payment. |
| | | **You** will do everything necessary to secure and preserve **our** subrogation rights, including but not limited to the execution of any documents necessary to allow **us** to bring suit in **your** name. |
| | | **You** will do nothing to prejudice **our** subrogation rights without **our** prior written consent. |
| | | Any recovery first will be paid to **you** up to the amount of any **retention you** have paid, and then to **us** up to the amount of any **covered amounts we** have paid. |
| J. | Titles | Titles of sections of and endorsements to this policy are inserted solely for convenience of reference and will not be deemed to limit, expand, or otherwise affect the provisions to which they relate. |

---

## VI. Definitions applicable to all Coverage Parts

The following definitions apply to all Coverage Parts **you** have purchased. If the same term is defined here and in a Coverage Part, then the definition in the Coverage Part will govern the coverage provided under that Coverage Part.

**Application**
means the signed application for the policy and any attachments and materials submitted with that application. If this policy is a renewal or replacement of a previous policy issued by **us**, **application** also includes all previous signed applications, attachments, and materials.

**Coverage part limit**
means the amount stated in the Declarations as the aggregate limit applicable to each Coverage Part **you** have purchased which is subject to an aggregate limit.

**Covered amounts**
means any amounts **we** have expressly agreed to pay under any Coverage Part **you** have purchased.

**Employee**
means any past, present, or future:

1. employee (including any part-time, seasonal, leased, or temporary employee or any volunteer);
2. partner, director, officer, or board member (or equivalent position); or
3. independent contractor;

of a **named insured**, but only while in the course of their performance of work or services on behalf of or at the direction of the **named insured**.

**Named insured**
means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations.

**Policy period**
means the period of time identified in Item 2 of the Declarations, and any optional extension period, if purchased.

**Professional services**
means those services identified as Covered Professional Services under any Coverage Part on the Declarations containing such a description.



# General Terms and Conditions

**Related claims**            means all **claims** that are based upon, arise out of, or allege:

1.   a common fact, circumstance, situation, event, service, transaction, cause, or origin;

2.   a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins;

3.   a continuous or repeated act, error, or omission in the performance of **your professional services**; or

4.   the same **breach**, **event**, **occurrence**, or offense.

The determination of whether a **claim** is related to another **claim** or **claims** will not be affected by the number of claimants or **insureds** involved, causes of action asserted, or duties involved.

**Retention**               means the amount or time identified as such in the Declarations.

**Retroactive date**          means the date identified as such in the Declarations.

**We**, **us**, or **our**            means the Company identified on the Declarations as issuing this policy.

**You**, **your**, or **insured**      means any individual or entity expressly described as an **insured** in any Coverage Part **you** have purchased.



# Endorsements



**Hiscox Insurance Company Inc.**

Policy Number:         P102.552.460.1
Named Insured:        Balgo Teachnologies LLC
Endorsement Number:  1
Endorsement Effective: 11/02/2023

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

---

### FLORIDA ADDENDUM TO THE DECLARATIONS

If you have questions about your insurance policy, or questions about claims relating to your insurance policy, please contact your insurer at the following:

**5 Concourse Parkway**
Suite #2150
Atlanta, GA 30328

Claims Assistance:  1-866-424-8508

Policy Assistance and General Information:  1-855-941-3304

INT E9995 FL (08/21)

Hiscox Insurance Company Inc.



Endorsement 2

NAMED INSURED: Balgo Teachnologies LLC

**Cap on Losses from Certified Acts of Terrorism**                                                      Page 1 of 1

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE FEDERAL TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.

The following is hereby added to the Policy and shall apply to all coverage:
With respect to any one or more "act of terrorism", the Company will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

The term "act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the federal Terrorism Risk Insurance Act for an "act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to the pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

All other terms and conditions remain unchanged.

Endorsement Effective:  November 2, 2023                              Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

INT E9999 CW (01/15)

Hiscox Insurance Company Inc.



Endorsement 3

NAMED INSURED: Balgo Teachnologies LLC

**Amend Cancellation Provision Endorsement (14 Days Full Refund)**                    Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

In Section V. Other provisions affecting coverage, C. Cancellation, item 4 is deleted in its entirety and replaced with the following:

4.   If this policy is canceled by the **named insured** within 14 days of the beginning of the **policy period**, **we** will refund the entire premium. If this policy is otherwise canceled by the **named insured**, **we** will retain the customary short rate proportion of the premium.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

WCL E6316 CW (04/19)

Hiscox Insurance Company Inc.



Endorsement 4

NAMED INSURED: Balgo Teachnologies LLC

**Nuclear Incident Exclusion Clause-Liability-Direct (Broad)**                                    Page 1 of 2

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

**We** will have no obligation to pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **event**, or **occurrence**:

A.   Under any liability coverage, for injury, sickness, disease, death, or destruction:

   1.   for which **you** are also insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, or Nuclear Insurance Association of Canada, or would be insured under any such policy but for exhaustion of its limit of liability; or

   2.   resulting from the **hazardous properties** of **nuclear material** and with respect to which:

      a.   any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, as amended; or

      b.   **you** are, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   Under any Medical Payments coverage, or under any Supplementary Payments provision relating to immediate medical or surgical relief, for expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

C.   Under any liability coverage, for injury, sickness, disease, death, or destruction resulting from the **hazardous properties** of **nuclear material**, if:

   1.   the **nuclear material** is at any **nuclear facility** owned or operated by **you** or on **your** behalf, or has been discharged or dispersed from such a facility;

   2.   the **nuclear material** is contained in **spent fuel** or **waste** which is or was at any time possessed, handled, used, processed, stored, transported, or disposed of by **you** or on **your** behalf; or

   3.   the injury, sickness, disease, death, or destruction arises out of the furnishing by **you** of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (3) applies only to injury to or destruction of property at such **nuclear facility**.

As used in this endorsement:

**Hazardous properties** includes radioactive, toxic, or explosive properties;

**Nuclear material** means **source material**, **special nuclear material**, or **byproduct material**;

**Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**Source material**, **special nuclear material**, and **byproduct material** have the meanings given them in the Atomic Energy Act of 1954, as amended;

Hiscox Insurance Company Inc.



Endorsement 4

NAMED INSURED: Balgo Teachnologies LLC

**Nuclear Incident Exclusion Clause-Liability-Direct (Broad)**                    Page 2 of 2

**Spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

**Waste** means any waste material:

1. containing **byproduct material**; and

2. resulting from the operation by any person or organization of any **nuclear facility** included in paragraph 1 or 2 of the definition of **nuclear facility**;

**Nuclear facility** means:

1. any **nuclear reactor**;

2. any equipment or device designed or used for:

      a.    separating the isotopes of uranium or plutonium;

      b.    processing or utilizing **spent fuel**; or

      c.    handling, processing, or packaging **waste**;

3. any equipment or device used for the processing, fabricating, or alloying of **special nuclear material**, if at any time the total amount of such material in **your** custody at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

4. any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of **waste**.

**Nuclear facility** includes the site on which any of the foregoing is located, all operations conducted on such site, and all premises used for such operations;

With respect to injury to or destruction of property, "injury" or "destruction" includes all forms of radioactive contamination of property.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

WCL E6017 CW (04/19)

Hiscox Insurance Company Inc.



Endorsement 5

NAMED INSURED: Balgo Teachnologies LLC

**War, Civil War, Cyberwarfare, and NCBR Exclusion Endorsement**                                                    Page 1 of 2

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

I.   This policy does not apply to and **we** will have no obligation to pay any sums under this policy, including any **damages**, **claim expenses**, or other **covered amounts**, for any **claim**, **event**, or **occurrence** based upon or arising out of, directly or indirectly occasioned by, happening through, or in consequence of:

   1.   war, invasion, acts of foreign enemies, hostilities (whether war is declared or not), civil war, rebellion, revolution, insurrection, military, or usurped power;

   2.   confiscation, nationalization, requisition, destruction of, or damage to property by or under the order of any government, public, or local authority;

   3.   **cyberwarfare**, to the extent not otherwise excluded by paragraph 1; or

   4.   any **NCBR malicious act**.

   However, this exclusion will not apply to coverage under the General Liability Coverage Part (if purchased) for damage by fire to premises while rented to **you** or temporarily occupied by **you** with the owner's permission. Any payments **we** make for **property damage** to such premises will be subject to the Damage to Premises Limit.

II.  For purposes of this Endorsement, the following definitions apply:

   **Cyberwarfare**                      means any:

                              1.   unauthorized access to, or use, alteration, corruption, damage, manipulation, misappropriation, theft, deletion, or destruction of, any computer hardware or electronic data;

                              2.   creation, transmission, or introduction into a computer system, computer network, or electronic data of a computer virus or harmful code; or

                              3.   restriction or inhibition of access to a computer system, computer network, or electronic data, including through a denial-of-service (DoS) attack,

                              committed by, or on behalf of, a **state**.

                              In determining by whom any action listed in parts 1. through 3. above is committed **we** will consider to whom any governing body (including the governing body's intelligence, law enforcement, or military services) attributes such action, regardless of whether:

                              A.   the computer system, computer network, or electronic data is physically located within the jurisdiction of that governing body; or

                              B.   there are inconsistent statements within different branches or agencies of that governing body (including intelligence, law enforcement, or military services) as to whom the action is attributable to.

                              However, if:

                              i.   a governing body has not attributed any such action to a **state**, or any person, group, association, or entity acting on the **state's** behalf; and

Hiscox Insurance Company Inc.



Endorsement 5

NAMED INSURED: Balgo Teachnologies LLC

**War, Civil War, Cyberwarfare, and NCBR Exclusion Endorsement**                                    Page 2 of 2

ii.   there is at least one **media report** or a cybersecurity forensic firm report indicating that such action is attributed to a **state** or any person, group, association, or entity acting on the **state's** behalf,

then **we** will not pay any **damages**, **claim expenses**, or other **covered amounts** resulting from any action listed in parts 1. through 3. above until any governing body attributes such action to a **state** or any person, group, association, or entity acting on the **state's** behalf.

If a governing body does not attribute such action to a **state** or any person, group, association, or entity acting on the **state's** behalf, or declares it is unable to do so, then a **media report** or cybersecurity forensic firm report will be conclusive evidence that the act was committed by, or on behalf of, a **state**.

For purposes of this definition, "**media report**" means an article published by the Associated Press, Reuters, Wall Street Journal, or the British Broadcasting Corporation.

For purposes of this definition, "**state**" means a sovereign state, state-like entity, quasi-state, proto-state, or a state-sponsored actor or group.

| | |
|---|---|
| **NCBR malicious act** | means an act or series of acts that harms another person or damages property through the physical release or dispersal of **nuclear, chemical, biological, or radiological agents or materials**, which is carried out by any person or group of persons, whether acting alone, on behalf of, or in connection with any organization. |
| **Nuclear, chemical, biological, or radiological agents or materials** | means: |

1.   nuclear reaction, nuclear radiation or radioactive particles, whether released or dispersed by nuclear or conventional devices;

2.   any chemical compound; or

3.   any pathogen,

in sufficient concentration to cause harm to people or damage to property.

Endorsement Effective:  November 2, 2023                          Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

Hiscox Insurance Company Inc.



Endorsement 6

NAMED INSURED: Balgo Teachnologies LLC

**State Amendatory Inconsistency**                                                          Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

The following is added to the end of Section V. Other provisions affecting coverage:

ST-A.  State amendatory       In the event there is an inconsistency between any:
       inconsistency

1. state amendatory attached to this policy, or any other wording attached to this policy to comply with applicable law; and
2. any other terms or conditions of this policy,

then, to the extent permitted by law and subject to the limitations below, **we** will apply the terms or conditions that are more favorable to **you**.

This section will not apply to the extent that:

1. the state amendatory or other wording expressly limits coverage in order to comply with applicable law, or
2. the state amendatory or other wording relates to premium.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

WCL E6081 CW (09/15)

Hiscox Insurance Company Inc.



Endorsement 7

NAMED INSURED: Balgo Teachnologies LLC

**Florida Amendatory Endorsement**                                                                Page 1 of 3

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the General Terms and Conditions are amended as follows:

I.    In Section III. Your obligations to us, B. Your duty to cooperate, paragraph 1 is deleted in its entirety and replaced by the following:

    1.    notifying **us** as soon as practicable if **you** receive any settlement demands or offers, and sending **us** copies of any demands, notices, summonses, or legal papers;

II.   In Section III. Your obligations to us, D. Your representations is deleted in its entirety and replaced by the following:

    **You** agree that all representations made and all materials submitted by **you** or on **your** behalf in connection with the **application** for this policy are true, accurate, and not misleading, and agree they were relied on by **us** and were material to **our** decision to issue this policy to **you**. If **we** learn any of the representations or materials were untrue, inaccurate, or misleading in any respect which materially affect the acceptance of the risk assumed by **us** under this policy, the policy may be canceled and/or coverage may be denied.

III.  In Section V. Other provisions affecting coverage, C. Cancellation is deleted in its entirety and replaced with the following:

| | | |
|---|---|---|
| Cancellation | 1. | This policy may be canceled by the **named insured** by giving written notice, which must include the date the cancellation will be effective, to **us** at the address stated in the Declarations. |
| | 2. | This policy may be canceled by **us** by mailing to the **named insured** by registered, certified, other first class-mail or by email, at the **named insured's** address or email address stated in Item 1 of the Declarations, written notice which must include the reason for the cancellation and the date the cancellation will be effective. The effective date of the cancellation will be no less than 60 days after the date of the notice of cancellation, or ten days if the cancellation is due to nonpayment of premium. |

If this policy has been in effect for more than 60 days, **we** may cancel this policy only for one of the following reasons:

    a.    Nonpayment of premium;

    b.    The policy was obtained by a material misstatement;

    c.    There has been a failure to comply with underwriting requirements established within 60 days of the effective date of coverage;

    d.    There has been a substantial change in the risk covered by the policy; or

    e.    The cancellation is for all **insureds** under such policies for a given class of insureds.

    3.    The mailing (or emailing) of the notice will be sufficient proof of notice, and this policy will terminate at the date and hour specified in the notice.

Hiscox Insurance Company Inc.



Endorsement 7

NAMED INSURED: Balgo Teachnologies LLC

**Florida Amendatory Endorsement**                                            Page 2 of 3

4.  If this policy is canceled by **us** or by the **named insured**, **we** will return a pro rata proportion of the premium. The pro rata proportion of the premium will be calculated by taking the number of days remaining in the period identified in Item 2 of the Declarations following the effective date of cancellation, dividing that by the total days in the period identified in Item 2 of the Declarations, and then multiplying this number by the total annual premium amount.

5.  Payment or tender of any unearned premium by **us** will not be a condition precedent to the cancellation, but such payment will be made as soon as possible. If return premium is not refunded with the notice of cancellation, **we** will mail the refund within 15 working days after the date cancellation takes effect.

IV.  The following is added to Section V. Other provisions affecting coverage, F. Estates, heirs, legal representatives, spouses and domestic partners:

**Domestic Partner** means a person legally recognized as a domestic or civil union partner under the provisions of any applicable federal, state or local law.

V.  The following is added to Section V. Other provisions affecting coverage:

NR-A     Non-renewal

**We** will mail or deliver or email to the first **named insured** written notice of non-renewal, including the reason for non-renewal, not less than 45 days before the end of the **policy period**.

**We** will mail or deliver or email the notice of non-renewal to the first **named insured** at the address or email address shown in Item 1 of the Declarations. If the notice of non-renewal is mailed or emailed, proof of mailing or emailing will be sufficient proof of notice.

PC-A     Payment of Claims

In the event an action is made or brought against **us** and **our** obligation to pay is determined by either **our** written agreement with the claimant or a final judgment against **us, we** will issue payment to the person or entity bringing such action upon the earliest of the following, provided **we** have received all documentation necessary to enable **us** to issue such payment, including any release of claims mutually agreeable to **us** and the claimant:

1.  Within 20 days after **we** and the claimant have agreed in writing to the settlement of a claim; or

2.  Within 60 days after a judgment or decree is entered in any court of the State of Florida or, in the case of an appeal from such judgment or decree, within 60 days from and after the affirmance of the same by the appellate court.

Hiscox Insurance Company Inc.



Endorsement 7

NAMED INSURED: Balgo Teachnologies LLC

**Florida Amendatory Endorsement**                                                    Page 3 of 3

VI.    The following is added to Section VI. Definitions applicable to all Coverage Parts:

**Breach**              means the unauthorized acquisition, access, use, or disclosure of **personally identifiable information**, including but not limited to that resulting from the loss or theft of a device containing such **personally identifiable information**.

Endorsement Effective:  November 2, 2023                         Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)



# Notices



**Hiscox Insurance Company Inc.**

## ECONOMIC AND TRADE SANCTIONS POLICYHOLDER NOTICE

Hiscox is committed to complying with the U.S. Department of Treasury Office of Foreign Assets Control (OFAC) requirements. OFAC administers and enforces economic sanctions policy based on Presidential declarations of national emergency.  OFAC has identified and listed numerous foreign agents, front organizations, terrorists, and narcotics traffickers as Specially Designated Nationals (SDN's) and Blocked Persons.  OFAC has also identified Sanctioned Countries.  A list of Specially Designated Nationals, Blocked Persons and Sanctioned Countries may be found on the United States Treasury's web site http://www.treas.gov/offices/enforcement/ofac/.

Economic sanctions prohibit all United States citizens (including corporations and other entities) and permanent resident aliens from engaging in transactions with Specially Designated Nationals, Blocked Persons and Sanctioned Countries.  Hiscox may not accept premium from or issue a policy to insure property of or make a claim payment to a Specially Designated National or Blocked Person.  Hiscox may not engage in business transactions with a Sanctioned Country.

A Specially Designated National or Blocked Person is any person who is determined as such by the Secretary of Treasury.

A Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States.

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy may be rendered void from its inception with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

    (1)  Any insured under this Policy, or any person or entity claiming the benefits of such insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to US economic trade sanctions;

    (2)  Any claim or suit that is brought in a Sanctioned Country or by a Sanctioned Country government, where any action in connection with such claim or suit is prohibited by US economic or trade sanctions;

    (3)  Any claim or suit that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to US economic or trade sanctions;

    (4)  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country government, where any activities related to such property are prohibited by US economic or trade sanctions; or

    (5)  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity who is otherwise subject to US economic or trade sanctions.

Please read your Policy carefully and discuss with your broker/agent or insurance professional.  You may also visit the US Treasury's website at http://www.treas.gov/offices/enforcement/ofac/.



**Policyholder Notice
Electronic Delivery**

If you received your insurance policy by email, it is because you have chosen electronic delivery of your policy documents and important notices, including cancellation and nonrenewal notices where permitted by law.  We also will send any renewal policy documents to you by email at the address you have provided.

If you are currently receiving paper documents and would like to have ease of retrieval and access and save on storage space, you will need to contact us and update your preferences.  Most documents can be sent electronically within minutes.  For electronic documents, you will need a computer or mobile device with Internet access and the ability to receive external emails.  You also will need software such as Adobe Reader® that allows you to view and save PDF documents, and a printer to create paper copies.

At any time you may request a paper copy of your policy, or you may withdraw your consent to receive documents by email.  We will then send documents to you by US mail at no added cost.

You must notify us if your email or street address changes.  To update your email or street address, or to request paper documents, please contact us at 888-202-3007.



# Policy Wording

HISCOX
CYBER**CLEAR**®

## Cyber Coverage Part

---

### I. Insuring agreement - What is covered

**We** will pay up to the **coverage part limit** for **loss** incurred by **you** in excess of the **retention** resulting from a **data breach**, **security failure**, or **extortion threat** that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

**Loss** means:

1. **breach costs**;

2. **claim expenses**, **damages**, and **PCI fines and assessments** because of a **claim** made against **you**;

3. **claim expenses** and **penalties** because of a **regulatory proceeding** initiated against **you**;

4. **cyber extortion costs**;

5. **business interruption costs**; and

6. **data recovery costs**.

---

### II. Coverage enhancements and sublimits

**We** will also make the following payments, provided **you** report such matters to **us** in accordance with Section V. Your obligations:

Bricking costs

A.   **We** will pay up to the limit stated in the Declarations for **bricking costs** resulting from the total or partial loss of hardware caused by the unauthorized reprogramming of software (including but not limited to firmware) that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

Any payment **we** make under this subsection A is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Cyber crime coverage

B.   **We** will pay up to the limit stated in the Declarations for **your** loss:

1. resulting directly from **funds transfer fraud**;

2. of **money** or **securities** transferred, paid, or delivered as a result of **social engineering**; or

3. of **money** resulting directly from **reverse social engineering**,

provided the **funds transfer fraud**, **social engineering**, or **reverse social engineering** first occurs and is first discovered by **you** during the **policy period**.

However, **our** obligation to make any payment under this subsection B is:

a. specifically excess of and will not contribute with any other valid and collectible crime insurance available to **you**, whether or not such other insurance is written specifically as excess over this policy; and

b. in excess of any retention or deductible applicable to such other insurance, which **you** must pay before **we** will be obligated to make any payment under this policy.

Any payment **we** make under this subsection B is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Dependent business interruption

C.   **We** will pay up to the limit stated in the Declarations for **business interruption costs you** incur resulting from a **dependent business event** experienced by any **dependent business** that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

Any payment **we** make under this subsection C is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

---

**HISCOX**
**CYBER**CLEAR®

# Cyber Coverage Part

Dependent system failure

D. **We** will pay up to the limit stated in the Declarations for **business interruption costs you** incur resulting from a **dependent system failure** experienced by any **dependent business** that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

Any payment **we** make under this subsection D is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Enhanced privacy regulation coverage

E. **We** will pay up to the limit stated in the Declarations for **damages**, **claim expenses**, and **penalties** for any **regulatory proceeding** for a **consumer privacy violation**, provided the **regulatory proceeding** is first brought against **you** during the **policy period** and it results from the performance of **your** business operations by **you** or anyone on **your** behalf (including **your** subcontractors or outsourcers) on or after the **retroactive date**.

Any payment **we** make under this subsection E is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Reputational harm

F. **We** will pay up to the limit stated in the Declarations for **reputational harm** the insured **organization** sustains resulting from the **publication** of an otherwise covered **event** that first occurs during the **policy period**, provided the **publication** of such **event** occurs no later than: (i) the end of the **policy period**; or (ii) 90 days after the end of the **policy period** for **events** first discovered by **you** in the last 90 days of the **policy period**.

Any payment **we** make under this subsection F is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Supplemental payments

G. **We** will pay reasonable expenses, including loss of wages and a $250 travel per diem, incurred by **you** if **we** require **you** to attend depositions, arbitration proceedings, or trials in connection with the defense of a covered **claim**, but **we** will not pay more than an aggregate of $10,000 per **claim** for such expenses, regardless of the number of **insureds**.

No **retention** will apply to amounts **we** pay under this subsection G, and such amounts will be in addition to, and not part of, the **coverage part limit**.

System failure

H. **We** will pay up to the limit stated in the Declarations for **business interruption costs you** incur resulting from a **system failure** that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

Any payment **we** make under this subsection H is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

Utility fraud

I. **We** will pay up to the limit stated in the Declarations for **utility overages you** incur resulting from a **utility fraud** that first occurs and is discovered by **you** during the **policy period**.

However, if **you** incur **utility overages** for a period exceeding 90 days from the date on which the **utility overages** are first incurred, then **we** will only be obligated to pay such **utility overages** that are incurred during the first 90 days.

Any payment **we** make under this subsection I is subject to the **retention** stated in the Declarations, and such payments will be a part of, and not in addition to, the **coverage part limit**.

---

## III. Who is an insured

For purposes of this Coverage Part, **you**, **your**, or **insured** means a **named insured**, **subsidiary**, **employee**, **executive**, **independent contractor**, or **acquired entity**, as defined below:



# Cyber Coverage Part

| | |
|---|---|
| **Named insured** | means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations. |
| **Subsidiary** | means any entity of which the **named insured** has majority ownership before or as of the inception of the **policy period**. |
| **Employee** | means any past, present, or future person employed by the **insured organization** as a permanent, part-time, seasonal, leased, or temporary employee, or any volunteer, but only while in the course of their performance of business operations on behalf of or at the direction of such **insured organization**. |
| **Executive** | means any past, present, or future partner, director, officer, or board member (or the equivalent positions) of the **insured organization**, but only while in the course of their performance of business operations on behalf of such **insured organization**. |
| **Independent contractor** | means any person or entity contracted by the **named insured** to perform the same business operations as the **named insured**, but only while in the course of their performance of such business operations on behalf of or at the direction of the **named insured**. |

**Acquired entity** means any entity:

1. in which the **named insured**:

   a. acquires substantially all of the assets;

   b. acquires the majority of its voting securities, as a result of which it becomes a **subsidiary**; or

   c. merges and leaves the **named insured** as the surviving entity; or

2. that the **named insured** creates as a **subsidiary**,

during the **policy period**.

With respect to an **acquired entity** whose revenues exceed 20% of the **named insured's** revenues (as reported in **your** most recent fiscal year-end financial statements prior to inception of this policy) at the time of its acquisition, any coverage under this policy will expire 90 days after the effective date of its acquisition unless, within such 90 day period:

a. the **named insured** provides **us** with written notice of such acquisition;

b. the **named insured** provides **us** with information related to such acquisition as **we** may reasonably require;

c. the **named insured** accepts any special terms, conditions, exclusions, or additional premium charge as **we** may reasonably require; and

d. **we** agree by written endorsement to provide such coverage.

This policy will apply to an **acquired entity** only with respect to **your** business operations performed after the acquisition, merger, or creation.

---

## IV. Defense and settlement of claims

| | |
|---|---|
| Defense | **We** have the right and duty to defend any covered **claim** or **regulatory proceeding**, even if such **claim** or **regulatory proceeding** is groundless, false, or fraudulent. |
| | **We** have the right to select and appoint counsel to defend **you** against a covered **claim**. **You** may request in writing that **we** appoint defense counsel of **your** own choice, but whether to grant or deny such a request will be at **our** sole discretion. |
| Settlement | **We** have the right to solicit and negotiate settlement of any **claim** but will not enter into a settlement without **your** consent, which **you** agree not to withhold unreasonably. **You** must notify **us** immediately of any settlement demands or offers. **We** agree that **you** may settle any **claim** |



## Cyber Coverage Part

where the total **loss**, **claim expenses**, and **damages** does not exceed the **retention**, provided the entire **claim** is resolved and **you** obtain a full release on behalf of all **insureds**.

If **you** withhold consent to a settlement recommended by **us** and acceptable to the party who made the **claim**, the most **we** will pay for that **claim** is the sum of:

1.  the amount of **our** recommended settlement;

2.  **claim expenses** incurred up to the date of **our** recommendation;

3.  70% of all **claim expenses** incurred after **our** recommendation; and

4.  70% of all **damages**, **PCI fines and assessments**, and **penalties** in excess of the settlement amount recommended by **us**.

## V. Your obligations

| | |
|---|---|
| Notifying us of claims and coverage enhancements | **You** must give written notice to **us** of any **claim**, or any other matter covered under Section II. Coverage enhancements and sublimits, as soon as possible once such **claim** or other matter is known to an **executive**, but in any event, no later than 60 days after the end of the **policy period**. |
| | All such notifications must be in writing and include a copy of the **claim** or other covered matter, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Notifying us of potential claims | **You** have the option of notifying **us** of **potential claims** that may lead to a covered **claim** against **you**. |
| | In order to do so, **you** must give written notice to **us** as soon as possible and within the **policy period**, and the notice must, to the greatest extent possible, identify the details of the **potential claim**, including identifying the potential claimant(s), the likely basis for liability, the likely demand for relief, and any additional information about the **potential claim we** may reasonably request. |
| | The benefit to **you** of notifying **us** of a **potential claim** is that if an actual **claim** arises from the same circumstances as the properly notified **potential claim**, then **we** will treat that **claim** as if it had first been made against **you** on the date **you** properly notified **us** of it as a **potential claim**, even if that **claim** is first made against **you** after the **policy period** has expired. |
| | All **potential claim** notifications must be in writing and submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Notifying us of events | **You** must give written notice to **us** of any **event** as soon as possible once such **event** is first discovered by **you**, but in any event no later than: (i) the end of the **policy period**; or (ii) 30 days after the end of the **policy period** for an **event** first discovered by **you** in the last 30 days of the **policy period**. |
| | All such notifications must be in writing and include a description of the **event**, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| | In addition, **you** must also inform, or allow **us** to inform, the appropriate law enforcement authorities for any **event** requiring such notification. |
| Retention | **Our** obligation to pay any **covered amounts** under this Coverage Part is in excess of the **retention**, which **you** must pay in connection with each covered **claim**, **event**, or other matter covered under Section II. Coverage enhancements and sublimits. With respect to **business interruption costs**, the **retention** will be the greater of: (i) the amount of **business interruption costs** incurred during the **waiting period**; or (ii) the **retention** amount stated in the Declarations. |
| | If any matters covered under Section II. Coverage enhancements and sublimits arise from the same circumstances as a covered **claim** or **event**, **you** will have to pay only one **retention**, which will be the highest applicable **retention** triggered, and the Each Claim and/or Event Limit and limits applicable to each triggered Coverage enhancement or sublimit will apply, up to the **coverage part limit**. |



# Cyber Coverage Part

**We** may at **our** sole discretion advance payment of **claim expenses**, **damages**, or **loss** within the **retention** amount on **your** behalf, but **you** will reimburse **us** for any such amounts as soon as **we** request such reimbursement.

---

## VI. Exclusions – What is not covered

| | |
|---|---|
| **A.** **Exclusions applicable to the entire Coverage Part** | **We** will have no obligation to pay any sums under this Coverage Part, including any **loss**, **damages**, **claim expenses**, or other **covered amounts**: |

Antitrust/deceptive trade practices

1. based upon or arising out of any actual or alleged:

   a. false, deceptive, or unfair trade practices;

   b. unfair competition, impairment of competition, restraint of trade, or antitrust violations;

   c. violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar foreign, federal, state, or local statutes, rules, or regulations; or

   d. deceptive or misleading advertising.

   However, this exclusion will not apply to a **claim** or **regulatory proceeding** resulting from a **data breach**, **security failure**, or **consumer privacy violation**.

Bodily injury

2. based upon or arising out of any actual or alleged physical injury, sickness, disease, or death, including but not limited to any mental anguish or emotional distress resulting from such physical injury, sickness, disease, or death; however, this exclusion will not apply to any emotional distress or mental anguish arising out of an actual or alleged **event** or **consumer privacy violation**.

COPPA

3. based upon or arising out of any actual or alleged violation of the Children's Online Privacy Protection Act (COPPA), or any similar federal, state, local, or foreign law.

Criminal proceedings

4. based upon or arising out of any **claim** brought in the form of a criminal proceeding, including but not limited to a criminal investigation, grand jury proceeding, or criminal action.

Employer liability and third party discrimination

5. based upon or arising out of any actual or alleged:

   a. obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any foreign, federal, state, or local statutory or common law;

   b. liability or breach of any duty or obligation owed by **you** as an employer or prospective employer; or

   c. harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact.

   However, this exclusion will not apply to any otherwise covered **claim** brought by an **employee** or **executive** resulting from a **data breach** or **security failure**.

Excluded statutory violations

6. based upon or arising out of any actual or alleged violation of the following laws:

   a. the Securities Act of 1933;

   b. the Securities Exchange Act of 1934;

   c. any state blue sky or securities laws;

   d. the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*;



## Cyber Coverage Part

e.    the Fair Debt Collection Practices Act; or

f.    the Fair Credit Reporting Act,

all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws.

Parts a and b of this exclusion will not apply to an otherwise covered **regulatory proceeding** resulting from a **data breach** or **security failure**.

Parts e and f of this exclusion will not apply to any **regulatory proceeding** for a **consumer privacy violation** covered under Section II. Coverage enhancements and sublimits, E. Enhanced privacy regulation coverage.

| | | |
|---|---|---|
| Funds transfer | 7. | for any actual or alleged loss, theft, or transfer of: |

a.    **your** funds, monies, or securities;

b.    the funds, monies, or securities of others in **your** care, custody, or control; or

c.    the funds, monies, or securities in the care, custody, or control of any third party,

including but not limited to the value of any funds, monies, or securities transferred by **you** or others on **your** behalf; however, this exclusion will not apply to loss otherwise covered under Section II. Coverage enhancements and sublimits, B. Cyber crime coverage.

| | | |
|---|---|---|
| Infrastructure interruption | 8. | based upon or arising out of any actual or alleged failure or interruption of service provided by an internet service provider, telecommunications provider, utility provider, including but not limited to any water, gas, electric, or other utility provider, or other infrastructure provider; however, this exclusion will not apply to a **data breach** involving electronic data that was stored in the cloud, on remote servers, or at a co-location or data hosting service. |
| Insured vs. insured | 9. | based upon or arising out of any **claim** brought by or on behalf of one **insured** against another **insured**; however, this exclusion will not apply to an otherwise covered **claim** brought by an **employee**, **executive**, or **independent contractor** alleging injury resulting from a **data breach**. |
| Intellectual property | 10. | based upon or arising out of any actual or alleged infringement, use, or disclosure of any intellectual property, including but not limited to copyright, trademark, trade dress, patent, service mark, service name, title, or slogan, or any publicity rights violations, cyber squatting violations, moral rights violations, any act of passing-off, or any misappropriation of trade secret; however, this exclusion will not apply to **loss** resulting from a: |

a.    **data breach** committed by a third party; or

b.    **security failure**.

| | | |
|---|---|---|
| Intentional acts | 11. | based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that **we** will pay **claim expenses** until there is a final adjudication establishing such conduct. |

This exclusion will apply to the **named insured** only if the conduct was committed or allegedly committed by any:

a.    **executive**; or

b.    employee of the **named insured** if any **executive** knew or had reason to know of such conduct by the employee.

This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured**.



# Cyber Coverage Part

| | | |
|---|---|---|
| Pollution/environmental | 12. | based upon or arising out of any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants**, including any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**. |
| Prior acts/notice/knowledge | 13. | based upon or arising out of any: |

    a.  **claim**, **potential claim**, or **event** that was the subject of any notice given under any other policy of which this policy is a renewal or replacement;

    b.  **claim**, **potential claim**, or **event** that was the subject of, or is related to, any prior or pending litigation, **claim**, written demand, arbitration, administrative or **regulatory proceeding** or investigation, or licensing proceeding that was filed or commenced against **you** and of which **you** had notice prior to the **policy period**; or

    c.  other matter **you** had knowledge of prior to the **policy period**, and **you** had a reasonable basis to believe could result in a **claim**, **loss**, or **covered amounts**.

However, if this policy is a renewal or replacement of a previous policy **we** issued that provided materially identical coverage, and is part of an unbroken chain of successive policies issued by **us**, the **policy period** referred to in paragraphs b and c, above, will be the policy period of the first such policy **we** issued.

| | | |
|---|---|---|
| Property damage | 14. | based upon or arising out of any actual or alleged **property damage**; however, this exclusion will not apply to: |

    a.  damage to electronic data or destruction or loss of use of electronic data;

    b.  a **data breach** or **security failure** resulting from damage to or destruction of tangible property; or

    c.  **bricking costs** covered under Section II. Coverage enhancements and sublimits, A. Bricking costs.

| | | |
|---|---|---|
| Related or continuing event | 15. | based upon or arising out of any related or continuing acts, errors, incidents, or **events** where the first act, error, incident, or **event** first occurred prior to the **retroactive date**. |
| Repair/replace/recall | 16. | based upon or arising out of any actual or alleged repair, upgrade, correction, recall, replacement, withdrawal, removal, or disposal costs incurred by **you** or others; however, this exclusion will not apply to: |

    a.  **extra expense**;

    b.  **bricking costs** covered under Section II. Coverage enhancements and sublimits, A. Bricking costs; or

    c.  **data recovery costs** incurred to replace, restore, or repair a **data asset** from back-ups, originals, or other sources.

| | | |
|---|---|---|
| Subsidiary outside control of named insured | 17. | based upon or arising out of any acts, errors, **events**, or incidents which occurred or were experienced by a past or present **subsidiary** or **acquired entity** while the **named insured** does not have majority ownership or management control of it. |
| Unsolicited telemarketing | 18. | based upon or arising out of any actual or alleged violation of any federal, state, local, or foreign statutes, ordinances, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, or regulations. |
| **B. Exclusions applicable only to business interruption costs and data recovery costs** | | **We** will have no obligation to pay any sums under this Coverage Part, including any **loss**, **damages**, **claim expenses**, or other **covered amounts**: |
| Excluded business interruption costs and data recovery costs | 19. | with respect to **business interruptions costs** and **data recovery costs** only, based upon or arising out of: |

    a.  any seizure, confiscation, nationalization, destruction, or loss of use of **computer**

**HISCOX**
**CYBERCLEAR®**

## Cyber Coverage Part

**systems** or **data assets** due to any action by a governmental authority or entity;

b.  the bankruptcy, financial impairment, or insolvency of the **insured organization** or other person or entity;

c.  ordinary wear and tear or gradual deterioration of the physical components of a **computer system**;

d.  any physical cause or natural peril, including but not limited to fire, wind, water, flood, subsidence, earthquake, or act of God;

e.  any liability to third parties or contractual penalties; or

f.  any **data breach** involving information that is not under the **insured organization's** direct control, or any **security failure** impacting or **extortion threat** against an entity that is not an **insured**; however, this exclusion will not apply to an otherwise covered **dependent business event**.

**Systems under the control of third parties**

20.  with respect to **business interruption costs** resulting from a **system failure** only, based upon or arising out of any total or partial interruption of a computer system owned or leased by any person or entity that is not an **insured**.

**C.  Exclusions applicable only to cyber crime**

21.  with respect to any **covered amounts** under Section II. Coverage enhancements and sublimits, B. Cyber crime coverage only, based upon or arising out of:

a.  the use or purported use of credit, debit, charge, access, convenience, identification, stored-value, or other cards or the information contained on such cards;

b.  an indirect result of an occurrence, **event**, or matter covered by Section II. Coverage enhancements and sublimits, B. Cyber crime coverage, including but not limited to loss resulting from:

  i.  **your** inability to realize income that you would have realized had there been no **funds transfer fraud**, **social engineering**, or **reverse social engineering**;

  ii.  payment of **damages** of any type for which **you** are legally liable; or

  iii.  payment of costs, fees, or other expenses **you** incur in establishing the existence or the amount of **funds transfer fraud**, **social engineering**, or **reverse social engineering**;

c.  legal costs or expenses incurred by **you** which are related to any legal action resulting from loss covered under this Coverage Part;

d.  the seizure or destruction of property by order of governmental authority or entity;

e.  any dishonest act committed by **you**, if the **named insured** is an individual, or by any **employee** or **executive**;

f.  any actual or alleged unauthorized acquisition, access, use, or disclosure of **personally identifiable information** or confidential corporate information that is held or transmitted in any form; however, this exclusion will not apply to a **funds transfer fraud**, **social engineering**, or **reverse social engineering** directly resulting from the use of such **personally identifiable information** or confidential corporate information; or

g.  any **reverse social engineering** resulting from the use of **your computer system** by a person who is authorized to access such **computer system**; however, this exclusion will not apply to **reverse social engineering** resulting from the unauthorized use of such **computer system** by a person otherwise authorized to access it.

**D.  Exclusions applicable only to utility fraud**

22.  with respect to any **covered amounts** under Section II. Coverage enhancements and sublimits, I. Utility fraud only, based upon or arising out of any:

a.  legal costs or expenses incurred by **you** which are related to any legal action resulting from a **utility fraud**;

b.  **utility fraud** resulting from any dishonest act committed by:



# Cyber Coverage Part

      i.    **you**, if the **named insured** is an individual;

      ii.    any **executive**; or

      iii.    any **employee** if any **executive** had knowledge of such dishonest act;

c.    **business interruption costs** resulting from lost productivity, including the throttling or capping of bandwidth by any internet or mobile data service provider, due to a third party's unauthorized access to or use of **your computer system**; or

d.    **utility fraud** resulting from any actual or alleged unauthorized acquisition, access, use, or disclosure of **personally identifiable information** or confidential corporate information that is held or transmitted in any form; however, this exclusion will not apply to a **utility fraud** directly resulting from the use of such **personally identifiable information** or confidential corporate information.

## VII. Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in Section III. Who is an insured, and in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts.

**Breach costs**

means the following costs **you** incur in response to an actual or suspected **data breach**:

1.    <u>legal costs</u>:

    reasonable and necessary costs for an attorney to provide advice to the **insured organization** in connection with its investigation of a **data breach**, to assist with the preparation of notifications to the regulators and affected individuals, and to determine and pursue **your** indemnification rights under a written agreement with a third party;

2.    <u>computer forensic costs</u>:

    reasonable and necessary costs for a computer forensic analysis conducted by outside forensic experts to:

    a.    investigate the cause of a **data breach** and determine the information impacted; and

    b.    stop or contain a **data breach**, provided all costs under this paragraph 2. b. will be limited to fees for time incurred by such outside forensic expert;

3.    <u>notification costs</u>:

    reasonable and necessary costs to notify individuals, regulators, or others as required by law, and to voluntarily notify individuals affected by a **data breach**;

4.    <u>call center costs</u>:

    reasonable and necessary costs to operate a call center to answer questions from affected individuals;

5.    <u>identity protection services</u>:

    reasonable costs to provide affected individuals with one year (or more as required by law) of services to monitor, restore, and/or protect an individual's credit or identity; and

6.    <u>crisis management and public relations costs</u>:

    reasonable costs:

    a.    for a public relations or crisis management consultant to assist the **insured organization** in reestablishing its **reputation** and to respond to media reports regarding a **data breach**;

    b.    for an attorney to advise the **insured organization** on reducing the likelihood of or costs of any **claim** otherwise covered by this Coverage Part; and

    c.    to issue statements via email or the **insured organization's** website regarding a **data breach** to individuals whose information was not impacted by such **data breach**.

All **breach costs** must be provided by a firm or vendor on **our** breach response providers list, and **we** will only be responsible to pay for **breach costs** provided by a firm or vendor on **our** breach response providers list. All **breach costs** require **our** prior written consent; however, **you**

**HISCOX**
**CYBERCLEAR®**

## Cyber Coverage Part

may incur legal costs under paragraph 1 provided by a firm on **our** breach response providers list without **our** prior written consent.

If **you** request in writing the right to retain privacy counsel that is not on the breach response providers list prior to a **data breach**, the decision to grant such request will be at **our** sole discretion.

**Breach costs** will not mean, and **we** will have no obligation to pay, any of **your** own costs, salaries, or overhead expenses.

| | |
|---|---|
| **Bricking costs** | means the reasonable and necessary expenses incurred by **you** with **our** prior written consent to rebuild, repair, or replace any hardware on which any **data asset** is stored due to the total or partial damage of hardware caused by the unauthorized reprogramming of software (including firmware), provided: |

1. such hardware, or any component of the hardware, can no longer be used for any or all of its purposes, and either:

   a. the hardware or component cannot be restored to functionality after reasonable efforts have been made; or

   b. it is reasonably estimated:

      i. to cost less to replace the hardware or component than it would to restore the hardware or component's functionality; or

      ii. that the cost to replace the hardware or component will be less than the additional **loss** that will be incurred if the hardware or component is not replaced; and

2. replacement of such hardware or component is reasonable and necessary to reduce or mitigate any amounts otherwise covered under this Coverage Part.

**Bricking costs** will not mean costs to rebuild, repair, or replace the hardware or component to a level which existed prior to the bricking event, unless:

i. the hardware or component can only be reasonably replaced with an upgraded or enhanced hardware or component; and

ii. the updated or enhanced hardware or component is necessary to repair, rebuild, or replace the hardware or component.

| | |
|---|---|
| **Business interruption costs** | means **income loss** and **extra expense** actually sustained during the **period of restoration** directly due to the total or partial interruption of **your** business, including an interruption due to the voluntary shutdown with **our** prior consent of **your computer system**, programs, or electronic data deemed necessary in order to minimize or avoid a threatened **event**, for a period greater than the **waiting period**. |

**Business interruption costs** does not mean:

1. legal costs or expenses;

2. costs to update, repair, upgrade, enhance, or replace any **computer system** or program to a level beyond that which existed prior to the **event**;

3. any amounts due to any:

   i. failure or act committed by;

   ii. incident, breach, or physical cause or natural peril (including but not limited to fire, wind, water, flood, subsidence, earthquake, or act of God) impacting; or

   iii. outage of,

   a supply chain provider;

4. any amounts due to unfavorable business conditions; or

5. costs to identify or remove software program errors or vulnerabilities.

| | |
|---|---|
| **Claim** | means: |



# Cyber Coverage Part

1. a written assertion of liability or any written demand for financial compensation or injunctive relief;

2. a **regulatory proceeding**;

3. unintentional breach of a written contract asserted by a **client**;

4. **contractual indemnity - breach costs**; or

5. **contractual indemnity - third-party**.

**Claim expenses**   means the following that are incurred by **us** or by **you** with **our** prior written consent:

1. all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and forensic or other experts) incurred in the investigation, defense, and appeal of a **claim**; and

2. premiums on appeal bonds, attachment bonds, or similar bond. However, **we** will have no obligation to apply for or furnish any such bonds.

**Claim expenses** will not mean and **we** will not be obligated to pay:

a. overhead costs, general business expenses, salaries, or wages incurred by **you**; or

b. the defense of any criminal investigation, criminal grand jury proceeding, or criminal action.

**Client**   means any person or entity with whom **you** have entered into a written contract to provide services or deliverables.

**Computer system**   means all interconnected electronic or wireless computers and their components, including but not limited to:

1. operating systems and hardware;

2. software;

3. associated input and output devices, data storage devices, and back up facilities;

4. mobile devices used by **insureds** and authorized by the **insured organization** to access its networks; and

5. related peripheral components, including Internet of things (IoT) devices,

provided they are:

a. under the control of or owned or leased by the **insured organization**; or

b. operated by a third party service provider, including but not limited to a cloud computing provider, pursuant to a written contract with the **insured organization**.

**Consumer privacy violation**   means:

1. the improper collection or retention of **personally identifiable information** by **you** or others on **your** behalf without the knowledge or permission of the individual to whom the **personally identifiable information** relates;

2. **your** misuse of **personally identifiable information**;

3. **your** failure to:

a. properly inform individuals of the collection of;

b. give access to;

c. rectify errors or inaccuracies in;

d. erase;

e. restrict processing of;

f. ensure portability of;

g. give notice regarding the rectification, erasure, or restriction of processing of;

h. allow individuals to opt in or out of **your** collection of;



# Cyber Coverage Part

    i.    advise individuals of their rights regarding **your** collection of; or

    j.    maintain or disseminate a written policy regarding **your** collection of,

    **personally identifiable information** as required by any consumer privacy law; or

4.    any other actual or alleged violation of any foreign, federal, state, or local consumer privacy law or consumer data protection law, including and any rules or regulations promulgated under such laws.

**Contractual indemnity - breach costs**
means any actual or alleged triggering of **your** obligations under a written contract to indemnify **your client**, a merchant bank, or a payment processor for **breach costs** that would be covered if **you** had incurred them, but only to the same extent as though **you** had incurred them.

**Contractual indemnity -third party**
means any actual or alleged triggering of **your** obligations under a contractual agreement to indemnify **your client**, a merchant bank, or a payment processor for **damages**, **penalties**, **PCI fines and assessments**, or **claim expenses** that would be covered if they arose from a **claim** against **you**, resulting from **your** actual or alleged:

1.    violation of any consumer privacy law or consumer data protection law protecting against disclosure of **personally identifiable information** or confidential corporate information;

2.    breach of common law duty relating to **personally identifiable information** or confidential corporate information; or

3.    unintentional breach of a written contract or public facing privacy policy relating to **personally identifiable information** or confidential corporate information,

but only to the same extent as though they arose from a **claim** against **you**.

**Cryptojacking**
means the unauthorized use of or access to the **insured organization's computer system** by a third party to mine cryptocurrency or any other digital or electronic currency.

**Cyber extortion costs**
means the following costs incurred with **our** prior written consent in response to an **extortion threat**:

1.    the ransom paid or, if the demand is for goods or services, the fair market value of such goods or services at the time of surrender; and

2.    reasonable and necessary fees and expenses incurred by a representative appointed by **us** to provide **you** with assistance.

If the ransom demanded consists of Bitcoin or any other digital, crypto, or electronic currency, **cyber extortion costs** will also include reasonable and necessary costs incurred by **you** with **our** prior written consent to obtain such currency. In that event, **we** will use the United States dollar equivalent determined by the rate of exchange published by the exchange in which **you** obtain the Bitcoin or other crypto or electronic currency on the date **you** obtain it in order to determine the value of the ransom paid.

**Damages**
means a monetary judgment or monetary award that **you** are legally obligated to pay (including pre- or post-judgment interest and claimant's attorney fees) or a monetary settlement agreed to by **you** and **us**.

**Damages** will not mean:

1.    fines, civil or criminal penalties, taxes, or sanctions;

2.    **penalties**;

3.    **PCI fines and assessments**;

4.    any punitive, exemplary, or multiple damages; however, **we** will pay punitive or exemplary damages to the extent insurable in any applicable jurisdiction that most favors coverage;

5.    the return or reduction of fees, commissions, profits, or charges for goods provided or services rendered;

6.    restitution, disgorgement of profits, or unjust enrichment;

7.    the cost of complying with injunctive relief;



# Cyber Coverage Part

8. amounts **you** agree to indemnify; however, **we** will pay such amounts to the extent they are explicitly covered under this Coverage Part;

9. any coupons, discounts, prizes, or other incentives, unless agreed in advance by **us** in **our** discretion; provided any such amounts will not include any profits to **you**;

10. any liquidated damages, but only to the extent such damages exceed the amount for which **you** would have been liable in the absence of the liquidated damages agreement; or

11. any service credits.

| | |
|---|---|
| **Data asset** | means any electronic data or software of the **insured organization**. |
| **Data breach** | means the acquisition, access, or disclosure of **personally identifiable information** or confidential corporate information by a person or entity, or in a manner, that is unauthorized by the **insured organization**. |

**Data recovery costs**    means reasonable and necessary expenses incurred by **you** with **our** prior written consent to:

1. regain access to a **data asset**; or

2. replace, restore, or repair a **data asset** from back-ups, originals, or other sources.

If a **data asset** cannot reasonably be accessed, replaced, restored, or repaired, then **data recovery costs** will not exceed the reasonable and necessary expenses incurred by the **named insured** or **subsidiary** to reach that determination.

**Data recovery costs** will not mean:

a. amounts to identify or remediate software program errors or vulnerabilities;

b. the economic value of any **data asset**, including but not limited to trade secrets;

c. costs to restore, repair, update, or replace any **data asset** to a level beyond which existed prior to the **event**; or

d. costs to research or develop any **data asset**.

**Dependent business**    means an entity that:

1. is not owned, operated, or controlled by the **insured organization**; and

2. provides **outsourced business processes** or **information technology services** for the **insured organization** pursuant to a written contract.

**Dependent business** does not include a supply chain provider.

**Dependent business event**    means:

1. the acquisition, access, or disclosure of **personally identifiable information** or confidential corporate information by a person or entity, or in a manner, that is unauthorized by the **dependent business**;

2. a threat from a third party to commit an intentional attack against the **dependent business'** website or computer system or publicly disclose confidential corporate information or **personally identifiable information** misappropriated from the **dependent business** if **money**, **securities**, or **other property** is not paid; or

3. any failure by the **dependent business** or by others on the **dependent business'** behalf (including the **dependent business'** subcontractors, outsourcers, or independent contractors) in securing the **dependent business'** computer system.

**Dependent system failure**    means any unintentional and unplanned total or partial outage of a **dependent business'** computer system that is not caused by a **dependent business event**.

**Event**    means a **data breach**, **extortion threat**, or **security failure**.

**Extortion threat**    means a threat from a third party (including acts of an employee acting outside of the scope of their duties and without the authorization of the **insured organization**) to commit or continue an intentional attack against the **insured organization's computer systems** or publicly disclose



# Cyber Coverage Part

confidential corporate information or **personally identifiable information** misappropriated from the **insured organization** if **money**, **securities**, or **other property** of value is not paid.

**Extra expense**
means reasonable and necessary costs incurred by the **insured organization** to minimize the interruption of its business that are over and above the cost that the **insured organization** ordinarily would have incurred to conduct its business had no **event** occurred.

**Financial institution**
means:

1. a bank, savings bank, savings and loan association, trust company, credit union, or similar thrift depository institution;

2. an insurance company; or

3. a stock brokerage firm, mutual fund, liquid assets fund, or similar investment company.

**Financial institution** does not include any cryptocurrency exchange or wallet.

**Funds transfer fraud**
means a:

1. telefacsimile, telephone, or other electronic instruction directing a **financial institution** to debit a **transfer account** and to transfer, pay, or deliver **money** or **securities** from that **transfer account**, which instruction purports to have been transmitted by **you**, but was in fact fraudulently transmitted by someone else without **your** knowledge or consent; or

2. written instruction issued to a **financial institution** directing such institution to debit a **transfer account** and to transfer, pay, or deliver **money** or **securities** from that **transfer account**, through an electronic funds transfer system at specified times or under specified conditions, which instruction purports to have been issued by **you**, but was in fact issued, forged, or altered by someone else without **your** knowledge or consent.

**Funds transfer fraud** does not include any:

a. instruction which directly or indirectly involves **you** or others acting on **your** behalf (including any **employees** or **executives**, but not the **financial institution**); or

b. transfer, payment, or delivery of **money** or **securities** which required **you** or others on **your** behalf (including any **employees** or **executives**, but not the **financial institution**) to take any action in order the complete the transfer, payment, or delivery of such **money** or **securities**.

**Income loss**
means the sum of the following:

1. Net Income (Net Profit or Loss before income taxes) that would have been earned; and

2. continuing normal operating expenses incurred, including payroll.

**Information technology services**
means computer and electronic technology services, including cloud computing and other hosted computer resources.

**Insured organization**
means the **named insured** or any **subsidiary** or **acquired entity**.

**Merchant services agreement**
means any agreement between the **insured organization** and a credit or debit card company, credit or debit card processor, financial institution, or independent sales organization allowing the **insured organization** to accept payment by credit card, debit card, or prepaid card.

**Money**
means:

1. currency, including Bitcoin or any other digital currency, cryptocurrency, or electronic currency, coins, and bank notes in current use anywhere in the world and having a face value; or

2. traveler's checks, register checks, and money orders held for sale to the public.

**Other property**
means any tangible property other than **money** that has intrinsic value. **Other property** does not include software, electronic data, or any other intangible property.

**Outsourced business processes**
means services supporting the operation of **your** business, including human resources, call center, and fulfillment.



# Cyber Coverage Part

| | |
|---|---|
| **PCI fines and assessments** | means all amounts **you** are legally obligated to pay under a **merchant services agreement** following a **data breach** or **security failure** impacting credit, debit, or prepaid card information, including: |

1. contractual fines or penalties for non-compliance with the PCI Data Security Standards ("PCI DSS");

2. monetary assessments (including for operational expenses, card reissuance fees, and fraud recoveries) and case management fees; and

3. fees for a mandatory audit following a **data breach** to show that **you** are PCI DSS compliant.

**Penalties**     means any monetary amounts:

1. payable to a governmental entity; and

2. which **you** are legally obligated to deposit into a fund (i.e., a Consumer Redress Fund) as equitable relief to pay consumer claims,

imposed in a **regulatory proceeding** to the extent insurable under the law of any applicable jurisdiction that most favors coverage, including but not limited to such amounts imposed under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), the EU General Data Protection Regulation (2016/679), the California Consumer Privacy Act of 2018 (CCPA), all as may be amended, or any other similar foreign, federal, state, or local statute, rule, or regulation. However, **penalties** will not mean any: costs to comply with injunctive relief; costs to establish or improve security or privacy practices; or audit, reporting, or compliance costs.

**Period of restoration**     means the period of time stated on the Declarations that:

1. begins on the date and time that the interruption of **your** business first occurred; and

2. ends on the earlier of the date and time that the interruption of **your** business: (i) ends; or (ii) could have ended had **you** acted with due diligence and dispatch.

**Personally identifiable information**     means the following, in any form, that is in **your** care, custody, or control, or in the care, custody, or control of any third party for whom **you** are legally liable:

1. non-public personal information as defined in any foreign, federal, state, or local statute, rule, or regulation, including but not limited to:

   a. protected health information as defined by the Health Insurance Portability and Accountability Act of 1996 (HIPAA),

   b. personal data, as defined by the EU General Data Protection Regulation (2016/679),

   c. nonpublic personal information, as defined by the Gramm-Leach-Bliley Act of 1999; or

   d. personal information, as defined by Massachusetts 201 CMR 17.00, or any similar state breach notification or consumer protection law,

   all as may be amended, and any rule or regulation promulgated under such statute, rule, or regulation;

2. any:

   a. social security number or individual taxpayer identification number;

   b. driver's license number or state identification number;

   c. passport number;

   d. credit card number; or

   e. financial account number or debit card number in combination with any required security code; or

3. any information that can be used alone or in combination with other information to identify, contact, or locate a person, or to identify a person in context, including but not limited to zip codes, internet protocol addresses, or geospatial data.

**HISCOX**
**CYBER**CLEAR®

## Cyber Coverage Part

However, solely for purposes of the coverage provided under this Coverage Part for any **dependent business event** or **dependent system failure**, **personally identifiable information** will mean the information described above that is in the **dependent business'** care, custody, or control, or in the care, custody, or control of any third party for whom the **dependent business** is legally liable.

**Personally identifiable information** does not include any information described above that is lawfully obtained from publicly available information, or from foreign, federal, state, or local government records lawfully made available to the general public.

| | |
|---|---|
| **Pollutants** | means any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, asbestos, silica, dust, nanoparticles, fibers, soot, fumes, acids, alkalis, chemicals, nuclear materials, germs, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed. |
| **Potential claim** | means any acts, errors, or omissions of an **insured** or other circumstances reasonably likely to lead to a **claim** covered under this policy. |
| **Property damage** | means physical loss of, physical damage to, or destruction of any tangible property, including the resulting loss of use of that property. |
| **Publication** | means any: |

1.  report or communication that has been publicized to the general public through any media channel, including but not limited to television, print media, radio or electronic networks, the internet, or electronic mail; or

2.  notice to individuals affected by an **event**.

| | |
|---|---|
| **Regulatory proceeding** | means a request for information, an investigation, a civil regulatory action, or an assertion of liability, by a governmental authority or entity in its official capacity. |
| **Related events** | means **events** that are based upon, arise out of, or allege: |

1.  a common fact, circumstance, situation, event, service, transaction, cause, or origin; or

2.  a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins.

| | |
|---|---|
| **Reputation** | means trust that **your** customers or **clients** have in doing business with **you** or in purchasing **your** products or services. |
| **Reputational harm** | means **income loss** the **insured organization** sustains for a period not to exceed six months due to the **insured organization's** loss of **clients**, customers, or sales resulting from damage to the **insured organization's reputation** or brand. |

**Reputational harm** does not include any:

1.  costs to rehabilitate the **insured organization's reputation** or brand, including legal costs or expenses;

2.  **breach costs**;

3.  **business interruption costs**; or

4.  costs caused by a **publication** of any occurrence other than a covered **event**.

| | |
|---|---|
| **Retention** | means: |

1.  with respect to all **claims**, **loss**, and other matters covered under Section II. Coverage enhancements and sublimits other than **business interruption costs**, the amount(s) stated under the Cyber Coverage Part section of the Declarations.

2.  with respect to **business interruption costs**, the greater of: (i) the amount of **business interruption costs** incurred during the **waiting period**; or (ii) the **retention** amount stated under the Cyber Coverage Part section of the Declarations.



## Cyber Coverage Part

| | |
|---|---|
| **Retroactive date** | means the date stated as such in the Declarations; provided, for any **acquired entity** acquired or created during the **policy period**, the **retroactive date** for such **acquired entity** will be the date the **named insured** created, merged with, or acquired effective control of the entity. |
| **Reverse social engineering** | means the intentional use of **your computer system** to mislead or deceive **your client** or **vendor** and which results in **your client** or **vendor** transferring **money** intended for **you** to another person or entity (i.e. invoice manipulation). |
| **Securities** | means negotiable or nonnegotiable instruments or contracts representing either **money** or property and includes: |

    1.    tokens, tickets, revenue, and other stamps (whether represented by actual stamps or unused value in a meter) in current use;

    2.    casino chips issued by **you**; or

    3.    evidences of debt issued in connection with credit or charge cards, which cards are not issued by **you**,

but does not include **money**.

| | |
|---|---|
| **Security failure** | means any failure by **you** or by others on **your** behalf (including **your** subcontractors, outsourcers, or **independent contractors**) in securing the **insured organization's computer system**, including but not limited to any failure resulting in any of the following: |

    1.    transmission of malicious software such as a computer virus, worm, logic bomb, or Trojan horse;

    2.    a denial of service attack against a third party;

    3.    the unauthorized acquisition, access, use, or disclosure of **personally identifiable information** or confidential corporate information that is held or transmitted in any form;

    4.    prevention of authorized electronic access to any **computer system**, **personally identifiable information**, or confidential corporate information; or

    5.    damage to any third party digital asset.

| | |
|---|---|
| **Social engineering** | means the intentional misleading or deception of an **employee** or **executive** by a person falsely purporting to be **your client**, **vendor**, **employee**, or **executive** through pretexting, phishing, spear phishing, whaling, a business email compromise, or any other confidence trick communicated by email, text, instant message, telephone, or other electronic means, which results in **your** transfer, payment, or delivery of **money** or **securities**. |
| **System failure** | means any unintentional and unplanned total or partial outage of the **insured organization's computer system** that is not caused by an **event**, **dependent business event**, or **dependent system failure**. |
| **Telephone toll fraud** | means the fraudulent use or fraudulent manipulation of an account code or system password required to gain access into the **insured organization's voice computer system** which results in long distance telephone charges incurred by **you**. |
| **Transfer account** | means an account maintained at a **financial institution** from which one can initiate the transfer, payment, or delivery of **money** or **securities** by means of: |

    1.    a telefacsimile, telephone, or other electronic instruction; or

    2.    written instructions establishing the conditions under which transfers are to be initiated by such **financial institution** through an electronic funds transfer system.

| | |
|---|---|
| **Utility fraud** | means the unauthorized use of or access to the **insured organization's computer system** by a third party, including but not limited to **cryptojacking** or a **telephone toll fraud**, that results in a **utility overage**. |
| **Utility overage** | means an increase in expenses incurred by **you** resulting from the unauthorized use of any of the following services or resources: |

    1.    electricity;



**Cyber Coverage Part**

2. water;

3. natural gas;

4. oil;

5. internet access, including mobile data;

6. telephone;

7. cable or satellite television; or

8. sewage,

provided such expenses:

a. are charged to **you** in a periodic billing statement by the provider of such service or resource pursuant to a written contract or agreement between **you** and the provider that was executed before a **utility fraud** occurred; and

b. are not charged at a flat fee that does not scale with the rate of use of such service or resource.

| | |
|---|---|
| **Vendor** | means any person or entity with whom the **insured organization** has entered into a written contract to provide services to the **insured organization** and is not owned, operated, or controlled by the **insured organization**. |
| **Voice computer system** | means a **computer system** which provides a capability used for the direction or routing of telephone calls in a voice communications network. |
| **Waiting period** | means the number of hours stated as such in the Declarations. |
| **You/your/insured** | means a **named insured**, **subsidiary**, **employee**, **executive**, **independent contractor**, or **acquired entity**, as defined in Section III. Who is an insured. |

---

## VIII. Other provisions affecting coverage

Appraisal

A. If **we** and the **named insured** do not agree on the amount of **business interruption costs** or **reputational harm**, either party may make a written demand for an appraisal of the **business interruption costs** or **reputational harm**. If such demand is made, each party will select a competent and impartial appraiser. The appraisers will then jointly select an umpire. If the appraisers cannot agree on an umpire, they may request that such selection be made by a judge of a court having jurisdiction. Each appraiser will separately state the amount of **business interruption costs** or **reputational harm**. If the appraisers do not agree on the amount of the **business interruption costs** or **reputational harm**, they will submit their differences to the umpire. Agreement by the umpire and at least one of the appraisers regarding the amount of the **business interruption costs** or **reputational harm** will be binding on **you** and **us**. Each party will pay their respective chosen appraiser and will equally share the costs of the umpire.

Conditions applicable to business interruption costs and reputational harm

B. The following are conditions precedent to the payment by **us** of any **business interruption costs** or **reputational harm** under this Coverage Part:

1. **You** must complete and sign a written, detailed, and affirmed proof of loss within 90 days after **your** discovery of the **publication** of an **event** or the interruption of **your** business (unless such period has been extended by **us** in writing) which will include, at a minimum, the following information:

a. a full description of the circumstances surrounding the **business interruption costs** or **reputational harm**, including, without limitation, the time, place, and cause of the loss;



# Cyber Coverage Part

    b.    a detailed calculation of any **business interruption costs** or **reputational harm**; and

    c.    all underlying documents and materials that reasonably relate to or form part of the basis of the proof of such **business interruption costs** or **reputational harm**.

2.    Any costs incurred by **you** in connection with establishing or proving **business interruption costs** or **reputational harm**, including but not limited to preparing a proof of loss, will be **your** obligation and are not covered under this policy.

**Conditions applicable to cyber extortion costs**

C.    The following are conditions precedent to the payment by **us** of any **cyber extortion costs** under this Coverage Part:

1.    **you** must inform, or allow **us** to inform, the appropriate law enforcement authorities where the illegal threat and ransom demand was made;

2.    **you** must keep **us** fully informed of all developments concerning the **extortion threat** and must obtain **our** agreement regarding the timing and manner of any ransom payment prior to making any ransom payment;

3.    **you** must demonstrate to **us** that the ransom has been surrendered under duress and that before agreeing to its payment **you** have taken all reasonable efforts to determine that the threat is genuine and not a hoax; and

4.    at least one **executive** must agree to the ransom payment.

**Conditions applicable to cyber crime coverage**

D.    The following are conditions precedent to the payment by **us** of any amounts under Section II. Coverage enhancements and sublimits, B. Cyber crime coverage:

1.    **we** have the right to examine and audit **your** books and records as they relate to the coverage provided by this Coverage Part at any time during the **policy period** and up to three years afterward;

2.    **you** must inform, or allow **us** to inform, the appropriate law enforcement authorities if **you** have reason to believe any loss involves a violation of law; and

3.    within 90 days of notification to **us** of a **funds transfer fraud**, **social engineering**, or **reverse social engineering** (unless such period has been extended by **us** in writing), **you** must complete and sign a written, detailed, and affirmed proof of loss which will include, at a minimum, the following information:

    a.    a full description of the circumstances surrounding the **funds transfer fraud**, **social engineering**, or **reverse social engineering**, including, without limitation, the time, place, and cause;

    b.    a detailed calculation of any lost **money** or **securities**; and

    c.    all underlying documents and materials that reasonably relate to or form part of the basis of the proof of such lost **money** or **securities**.

    Any costs incurred by **you** in connection with establishing or proving the **funds transfer fraud**, **social engineering**, or **reverse social engineering**, including but not limited to preparing a proof of loss, will be **your** obligation, and are not covered under this policy.

**Coverage territory**

E.    This Coverage Part will apply to **events** or other covered matters that take place anywhere in the world. However, with respect to **claims** or **regulatory proceedings** brought outside the United States, its territories or possessions, or Canada, this Coverage Part will not apply:

1.    to any **claim** or **regulatory proceeding** brought in any country in which the United States (or any of its departments, agencies, or subdivisions) administers or enforces economic or trade sanction laws; or

2.    if it would otherwise be in violation of the laws of the United States.

**Related claims/events/matters**

F.    For purposes of this Coverage Part:

**Cyber Coverage Part**

1.  all **related events** will be considered a single **event** first discovered on the date the first such **event** was discovered by **you**;

2.  all matters covered under Section II. Coverage enhancements and sublimits that are based upon, arise out of, or allege: (i) a common fact, circumstance, situation, event, service, transaction, cause, or origin; or (ii) a series of related facts, circumstances, situations, events, services, transactions, sources, causes, or origins, will be considered a single, related matter first discovered on the date the first such matter was discovered by **you**; and

3.  all **related claims** will be considered a single **claim** first made on the date the first such **claim** was made against **you**.



# Endorsements

Hiscox Insurance Company Inc.



Endorsement 8

NAMED INSURED: Balgo Teachnologies LLC

**Biometric Data Exclusion**                                                                    Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Cyber Coverage Part is amended as follows:

I.   The following exclusion is added to the end of Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part:

Biometric data                          based upon or arising out of the improper collection, retention, or use of any **biometric data** by **you** or anyone on **your** behalf.

II.  The following definition is added to the end of Section VII. Definitions:

**Biometric data**                      means personal data relating to the physical, physiological, or behavioral characteristics of a natural person, which allow or confirm the unique identification of that natural person.

III. In Section VII. Definitions, the following is added to the end of the definition of "**Personally identifiable information**":

**Personally identifiable information** also does not include any **biometric data**.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-CYB E2011 CW (04/19)

Hiscox Insurance Company Inc.



Endorsement 9

NAMED INSURED: Balgo Teachnologies LLC

**Blanket Additional Insured Endorsement (Written Contract)**                           Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Cyber Coverage Part is amended as follows:

I.   The following definition is added to the end of Section III. Who is an insured:

| | |
|---|---|
| **Additional insured** | means any person(s) or organization(s) the **named insured** has agreed in a written contract or agreement to add as an additional insured to a policy providing the type of coverage afforded by this Coverage Part, provided the contract or agreement: |

   1.   is currently in effect or becomes effective during the **policy period**; and

   2.   was executed before the business operations from which the **claim** or **event** arises were performed.

   Coverage is available for **additional insureds** solely for their liability arising out of the **named insured's** negligence or of those acting on the **named insured's** behalf and not for any liability arising out of the sole negligence of the **additional insured.**

II.  In the preamble of Section III. Who is an insured, the words "**additional insured,**" are added after "**named insured,**".

III. In Section VII. Definitions, the definition of "**You**, **your**, or **insured**" is amended to add the words "**additional insured,**" after "**named insured,**".

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-CYB E2013 CW (04/19)

Hiscox Insurance Company Inc.



Endorsement 10

NAMED INSURED: Balgo Teachnologies LLC

**Escrow and Title Activities Exclusion**                                              Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed:

This policy does not apply to and **we** will have no obligation to pay any **loss**, **damages**, **claim expenses**, or any other amounts for any **claim** or **event** based upon or arising out of any actual or alleged:

1.  handling, mishandling, collection, or disbursement of **money** for an escrow or trust account, or the inability or failure to pay, collect, or safeguard such **money**; or

2.  performance of or failure to perform services as a title company, title agent, or escrow agent.

For purposes of this Endorsement, the term "**money**" will be defined as follows:

**Money**                means:

1.  currency, including Bitcoin or any other digital currency, cryptocurrency, or electronic currency, coins, and bank notes in current use anywhere in the world and having a face value; or

2.  traveler's checks, register checks, and money orders held for sale to the public.

Endorsement Effective:  November 2, 2023                     Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-CYB E2050 CW (02/20)

Hiscox Insurance Company Inc.



Endorsement 11

NAMED INSURED: Balgo Teachnologies LLC

**Florida Amendatory Endorsement**                                      Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Cyber Coverage Part is amended as follows:

In Section VII. Definitions, the definition of "**Pollutants**" is deleted in its entirety and replaced by the following:

**Pollutants**           means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

Hiscox Insurance Company Inc.



Endorsement 12

NAMED INSURED: Balgo Teachnologies LLC

**Ransomware Event Sublimit Endorsement ($25,000)**                                    Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Cyber Coverage Part is amended as follows:

I.   The following is added to the end of Section II. Coverage enhancements and sublimits:

Ransomware event sublimit         RW-A.        **We** will pay up to $25,000, in the aggregate, for **loss you** incur in excess of the **retention** arising from a **ransomware event** that first occurs on or after the **retroactive date** and is discovered by **you** during the **policy period**.

However, if **you** meet the definition of a covered entity or business associate under the Health Insurance Portability and Accountability Act, this sublimit will apply only to **cyber extortion costs** and **business interruption costs you** incur.

Any payment **we** make under this subsection RW-A will be a part of, and not in addition to, the **coverage part limit**.

II.  The following exclusion is added to the end of Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part:

Ransomware events        based upon or arising out of any actual or alleged **ransomware event**; however, this exclusion will not apply to **loss** otherwise covered under Section II. Coverage enhancements and sublimits, RW-A. Ransomware event sublimit.

III. The following definition is added to the end of Section VII. Definitions:

**Ransomware event**        means:

1.  an **extortion threat**; or

2.  any other intentional attack by a third party (including acts of an employee acting outside the scope of their duties and without the authorization of the **insured organization**) against a **computer system** or **data asset**,

that is perpetrated through the use of any type of malicious software or malware designed to deny access to a **computer system** or **data asset** until a ransom is paid.

**Ransomware event** includes any subsequent **data breach** or **security failure** resulting from the initial threat or attack described above, except if **you** meet the definition of a covered entity or business associate as defined by under the Health Insurance Portability and Accountability Act.

Endorsement Effective:  November 2, 2023                    Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-CYB E2051 CW (11/19)

Hiscox Insurance Company Inc.



Endorsement 13

NAMED INSURED: Balgo Teachnologies LLC

**Cyber Policy Update Endorsment**                                     Page 1 of 2

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Cyber Coverage Part is amended as follows:

### Unsupported or Legacy Computer Systems Exclusion

I.    The following exclusion is added to the end of Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part:

| Unsupported/legacy computer systems | UL-1. | based upon or arising out of any vulnerability exploitation within a **computer system**, program, network, application, operating system, software, firmware, or hardware, if, as of the first known date of such vulnerability exploitation its developer or manufacturer has withdrawn or no longer supports such system, program, network, application, software, firmware, or hardware. |

### Exclude Wrongful Capture and Use of Data

II.    The following exclusion is added to the end of Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part:

| Wrongful capture and use of data | WC-1. | based upon or arising out of any actual or alleged monitoring, tracking, or profiling of an individual, without that individual's authorization, including but not limited to web-tracking, session recording, digital fingerprinting, behavioral monitoring, eavesdropping, wiretapping, audio or video recording, and use of any data resulting from such activities by **you** or by a third party on **your** behalf with **your** knowledge and consent. |

### Amend Excluded Statutory Violations Exclusion (False Claims Act)

III.    In Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part, Exclusion 6. "Excluded statutory violations" is deleted in its entirety and replaced with the following:

| Excluded statutory violations | 6. | based upon or arising out of any actual or alleged violation of the following laws: |

    a.    the Securities Act of 1933;

    b.    the Securities Exchange Act of 1934;

    c.    any state blue sky or securities laws;

    d.    the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*;

    e.    the Fair Debt Collection Practices Act;

    f.    the Fair Credit Reporting Act; or

    g.    the False Claims Act,

all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws.

Parts a and b of this exclusion will not apply to an otherwise covered **regulatory proceeding** resulting from a **data breach** or **security failure**.

Hiscox Insurance Company Inc.



Endorsement 13

NAMED INSURED: Balgo Teachnologies LLC

**Cyber Policy Update Endorsment**                                                        Page 2 of 2

Parts e and f of this exclusion will not apply to any **regulatory proceeding** for a **consumer privacy violation** covered under Section II. Coverage enhancements and sublimits, E. Enhanced privacy regulation coverage.

**Amend Infrastructure Interruption Exclusion**

IV.  In Section VI. Exclusions – What is not covered, A. Exclusions applicable to the entire Coverage Part, Exclusion 8. "Infrastructure interruption" is deleted in its entirety and replaced with the following:

| Infrastructure interruption | 8. | based upon or arising out of any actual or alleged failure, interruption, disturbance, degradation, corruption, impairment, or outage of service provided by an internet service provider, including any Domain Name System (DNS) or Certificate Authority; telecommunications provider; satellite provider; financial transaction or payment process platform provider, including a securities exchange; utility provider, including but not limited to any water, gas, electric, fuel, energy, or other utility provider; or any other infrastructure provider; however, this exclusion will not apply to a **data breach** involving electronic data that was stored in the cloud, on remote servers, or at a co-location or data hosting service. |

**Amend Act of God Exclusion**

V.  In Section VI. Exclusions – What is not covered, B. Exclusions applicable only to business interruption costs and data recovery costs, Exclusion 19.d. is deleted in its entirety and replaced with the following:

| | d. | any physical cause, physical event, natural peril, or act of God, including but not limited to fire, smoke, explosion, lightning, wind, water, flood, drought, subsidence, earthquake, volcanic eruption, tidal wave, tsunami, landslide, hail, electromagnetic pulse or radiation, solar flare, or solar wind, however caused and whether contributed to, made worse by, or in any way resulting from any such events; |

**Superseding Endorsement**

VI.  In the event that there is an inconsistency between this Endorsement and any other term or condition in another endorsement attached to and forming a part of this policy with respect to coverage for or exclusion of any claim or matter, we will apply the terms or conditions of this Endorsement for such claim or matter.

Endorsement Effective:  November 2, 2023                          Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-CYB E2075 CW (08/23)



# Notices



# Policy Wording

**HISCOX**
**CYBER**CLEAR

# Digital Media Liability Coverage Part

## I. What is covered

**We** will pay up to the **coverage part limit** for **damages** and **claim expenses** in excess of the **retention** for covered **claims** against **you** for any actual or alleged:

1. copyright infringement, trademark infringement, trademark dilution, trade dress infringement, publicity rights violations, or any misappropriation of content, formats, characters, trade names, character names, titles, voices, slogans, graphic material, or artwork;

2. invasion of privacy, intrusion upon seclusion, publication of private facts, false light, or misappropriation of name or likeness;

3. defamation, libel, slander, trade libel, product disparagement, or injurious falsehood;

4. unintentional infliction of emotional distress or outrage based on harm to the character or reputation of any person;

5. **unfair practices**, but only when asserted in conjunction with and based on the same allegations as a **claim** under part 1 above; or

6. negligence in connection with **your media activities** or **your advertising** of **your professional services**,

provided the **claim**:

a. directly results from **your media activities** or **your advertising** of **your professional services** performed on or after the **retroactive date**;

b. is first made against **you** during the **policy period**; and

c. is reported to **us** in accordance with Section V. Your obligations.

## II. Coverage enhancements

**We** will also make the following payments:

Declaratory relief

A. **We** will pay reasonable attorney's fees **you** incur in excess of the **retention** to prosecute a declaratory relief action, but only if:

1. a claimant has advised **you**, in writing, that **you** are committing copyright or trademark infringement;

2. directly in response to that written assertion, **you** file a declaratory relief action and the claimant files a counterclaim against **you** alleging copyright or trademark infringement; and

3. the counterclaim is covered under this policy and pending against **you** while **you** are prosecuting **your** declaratory relief action.

Any amounts **we** pay under this subsection A will be a part of, and not in addition to, the applicable Each Claim limit of liability and the **coverage part limit**.

Supplemental payments

B. **We** will pay reasonable expenses, including loss of wages and a $250 travel per diem, incurred by **you** if **we** require **you** to attend depositions, arbitration proceedings, or trials in connection with the defense of a covered **claim**, but **we** will not pay more than an aggregate of $10,000 per **claim** for such expenses, regardless of the number of **insureds**.

No **retention** will apply to amounts **we** pay under this subsection B, and such amounts will be in addition to, and not part of, the **coverage part limit**.

## III. Who is an insured

For purposes of this Coverage Part, **you**, **your**, or **insured** means a **named insured**, **subsidiary**, **employee**, or **acquired entity**, as defined below:



# Digital Media Liability Coverage Part

| | |
|---|---|
| **Named insured** | means the individual, corporation, partnership, limited liability company, limited partnership, or other entity identified in Item 1 of the Declarations. |
| **Subsidiary** | means any entity of which the **named insured** has majority ownership before or as of the inception of the **policy period**. |
| **Employee** | means any past, present, or future: |

1.    person employed by the **named insured** or **subsidiary** as a permanent, part-time, seasonal, leased, or temporary employee, or any volunteer; or

2.    partner, director, officer, or board member (or equivalent positions) of the **named insured** or **subsidiary**,

but only while in the course of their performance of **media activities** or **advertising** of **professional services** on behalf of or at the direction of such **named insured** or **subsidiary**.

**Acquired entity**      means any entity:

1.    in which the **named insured**:

    a.    acquires substantially all of the assets;

    b.    acquires the majority of its voting securities, as a result of which it becomes a **subsidiary**; or

    c.    merges and leaves the **named insured** as the surviving entity; or

2.    that the **named insured** creates and either owns substantially all of the assets or acquires the majority of its voting securities, as a result of which it becomes a **subsidiary**,

during the **policy period**.

With respect to an **acquired entity** whose revenues exceed 20% of the annual revenues of the **named insured** at the time of its creation or acquisition, any coverage under this policy will expire 90 days after the effective date of its creation or acquisition unless, within such 90 day period:

1.    the **named insured** provides **us** with written notice of such creation or acquisition;

2.    the **named insured** provides **us** with information related to such creation or acquisition as **we** may reasonably require;

3.    the **named insured** accepts any special terms, conditions, exclusions, or additional premium charge as **we** may reasonably require; and

4.    **we** agree by written endorsement to provide such coverage.

This policy will apply to an **acquired entity** only with respect to **your media activities** or **your advertising** of **your professional services** performed after the acquisition, merger, or creation.

---

## IV.  Defense and settlement of claims

| | |
|---|---|
| Defense | **We** have the right and duty to defend any covered **claim**, even if such **claim** is groundless, false, or fraudulent. |
| | **We** have the right to select and appoint counsel to defend **you** against a covered **claim**. **You** may request in writing that **we** appoint defense counsel of **your** own choice, but whether to grant or deny such a request will be at **our** sole discretion. |
| Settlement | **We** have the right to solicit and negotiate settlement of any **claim** but will not enter into a settlement without **your** consent, which **you** agree not to withhold unreasonably. |

**HISCOX**
**CYBER**CLEAR

## Digital Media Liability Coverage Part

If **you** withhold consent to a settlement recommended by **us** and acceptable to the party who made the **claim**, the most **we** will pay for that **claim** is the sum of:

1. the amount of **our** recommended settlement;

2. **claim expenses** incurred up to the date of **our** recommendation;

3. 70% of all **claim expenses** incurred after **our** recommendation; and

4. 70% of all **damages** in excess of the settlement amount recommended by **us**.

---

## V. Your obligations

| | |
|---|---|
| Notifying us of claims | **You** must give written notice to **us** of any **claim** as soon as possible once such **claim** is known to a partner, director, officer, or board member (or equivalent position) of the **named insured** or **subsidiary**, but in any event, no later than 60 days after the end of the **policy period**. |
| | All such notifications must be in writing and include a copy of the **claim**, and must be submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Notifying us of potential claims | **You** have the option of notifying **us** of **potential claims** that may lead to a covered **claim** against **you**. |
| | In order to do so, **you** must give written notice to **us** as soon as possible and within the **policy period**, and the notice must, to the greatest extent possible, identify the details of the **potential claim**, including identifying the potential claimant(s), the likely basis for liability, the likely demand for relief, and any additional information about the **potential claim we** may reasonably request. |
| | The benefit to **you** of notifying **us** of a **potential claim** is that if an actual **claim** arises from the same circumstances as the properly notified **potential claim**, then **we** will treat that **claim** as if it had first been made against **you** on the date **you** properly notified **us** of it as a **potential claim**, even if that **claim** is first made against **you** after the **policy period** has expired. |
| | All **potential claim** notifications must be in writing and submitted to **us** via the designated email address or mailing address identified in Item 6 of the Declarations. |
| Retention | **Our** obligation to pay **damages** and **claim expenses** under this Coverage Part is in excess of the **retention**, which **you** must pay in connection with each covered **claim**. |

---

## VI. Exclusions – What is not covered

**We** will have no obligation to pay any sums under this Coverage Part, including any **damages** or **claim expenses**, for any **claim**:

| | |
|---|---|
| Antitrust/deceptive trade practices | 1. based upon or arising out of any actual or alleged: |
| |     a. false, deceptive, or unfair trade practices; |
| |     b. unfair competition, impairment of competition, restraint of trade, or antitrust violations; |
| |     c. violation of the Sherman Anti-Trust Act, the Clayton Act, the Robinson-Patman Act, all including as may be amended, or any similar foreign, federal, state, or local statutes, rules, or regulations; or |
| |     d. deceptive or misleading advertising. |
| | However, this exclusion will not apply to an otherwise covered **claim** under part 5 of Section I. What is covered. |
| Bodily injury | 2. based upon or arising out of any actual or alleged **bodily injury**; however, this exclusion will not apply to a **claim** for emotional distress or outrage covered under part 4 of Section I. What is covered. |

---



## Digital Media Liability Coverage Part

| | | |
|---|---|---|
| Breach of contract | 3. | based upon or arising out of any actual or alleged breach of any contract or agreement, or any liability of others that **you** assume under any contract or agreement; however, this exclusion will not apply to: |
| | | a. any liability **you** would have in the absence of the contract or agreement; or |
| | | b. any **claim** arising from **your** written agreement to indemnify **your client** against any liability directly resulting from content supplied to them by **you**, but only if **you** entered into the agreement before the liability was incurred. |
| Breach of warranty/guarantee | 4. | based upon or arising out of any: |
| | | a. actual or alleged breach of express warranties or guarantees; however, this exclusion will not apply to any liability **you** would have in the absence of the warranties or guarantees; or |
| | | b. written, oral, express, or implied statement, promise, warranty, or guarantee in connection with any goods or products **you** sell, including but not limited to any warranties or representations regarding the authenticity, merchantability, or fitness of such goods or products. |
| Client content | 5. | based upon or arising out of any content provided to **you** by **your** client; however, **we** will pay **claim expenses** for any **claims** against **you** based upon or arising out of such content. |
| Collection of data without knowledge | 6. | based upon or arising out of any actual or alleged: |
| | | a. collection of personally identifiable information by **you** (or others on **your** behalf) without the knowledge or permission of the person to whom the personally identifiable information relates; or |
| | | b. use of personally identifiable information by **you** (or others on **your** behalf) in violation of applicable law. |
| Commercial dispute | 7. | based upon or arising out of any actual or alleged commercial dispute with **your** business partner or business associate, including but not limited to any reseller, distributor, original equipment manufacturer, third-party sales agent, systems integrator, or joint venturer, but only to the extent such a **claim** is based upon: |
| | | a. a commission or royalty, or any other term upon which such partner or associate is to be compensated in connection with doing business with **you**, or any compensation or remuneration promised or owed by **you** pursuant to those terms; or |
| | | b. **your** decision to cease doing business with such a partner or associate. |
| Cramming/slamming | 8. | based upon or arising out of: |
| | | a. the imposition of charges for services or content in relation to telephone, cell phone, wireless data, cable television, internet, voice over internet protocol (VoIP) or other similar telecommunications services, which charges have not been adequately disclosed or which services or content have not been requested by the consumer; or |
| | | b. the unauthorized switching of telecommunications carriers, including providers of telephone, cell phone, wireless data, cable television, internet, voice over internet protocol (VoIP) or other similar services. |
| Criminal proceedings | 9. | brought in the form of a criminal proceeding, including but not limited to a criminal investigation, grand jury proceeding, or criminal action. |
| Employer liability and third party discrimination | 10. | based upon or arising out of any actual or alleged: |
| | | a. obligation under any workers' compensation, unemployment compensation, employers' liability, fair labor standards, labor relations, wage and hour, or disability benefit law, including any similar provisions of any foreign, federal, state, or local statutory or common law; |



# Digital Media Liability Coverage Part

|   |   |   |
|---|---|---|
| | b. | liability or breach of any duty or obligation owed by **you** as an employer or prospective employer; or |
| | c. | harassment, wrongful termination, retaliation, or discrimination, including but not limited to adverse or disparate impact. |

**Excluded costs and damages**

11. to the extent it seeks or includes:

    a. fines, penalties, taxes, or sanctions against **you**;

    b. overhead costs, general business expenses, salaries, or wages incurred by **you**, including the costs of recalling, producing, reproducing, or reprinting any **media content** or the costs of any services incurred in connection with such activities;

    c. the return, reduction, or restitution of fees, commissions, profits, or charges for goods provided or services rendered;

    d. liquidated or multiple damages;

    e. restitution, disgorgement of profits, any advantage to which **you** were not legally entitled, or unjust enrichment; or

    f. the cost of complying with injunctive relief.

**Excluded statutory violations**

12. based upon or arising out of any actual or alleged violation of the following laws:

    a. the Securities Act of 1933;

    b. the Securities Exchange Act of 1934;

    c. any state blue sky or securities laws;

    d. the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*; or

    e. the Employee Retirement Income Security Act of 1974,

all including as may be amended, or any similar provisions of any foreign, federal, state, or local statutory or common law and any rules or regulations promulgated under such laws.

**Failure to maintain insurance or bonds**

13. based upon or arising out of any actual or alleged failure to procure or maintain adequate insurance or bonds.

**False or misleading advertising**

14. based upon or arising out of any actual or alleged false or misleading advertisement or any inaccurate, inadequate, or incomplete description of any goods, products, or services, including but not limited to with respect to the design, manufacture, sale, installation, marketing, development, processing, distribution, packaging, labeling, solicitation, performance, or quality of any good or product; however, this exclusion will not apply to any otherwise covered **claim** for trademark infringement based on **your** alleged unauthorized use of another's trademark in **your media activities** or **your advertising** of **your professional services**.

**Government or licensing organization investigation/ enforcement**

15. based upon or arising out of any actual or alleged governmental investigation or enforcement of any state or federal rules or regulations, including but not limited to any rule or regulation promulgated by the Federal Trade Commission, Federal Communications Commission, or the Securities and Exchange Commission, or any enforcement investigation or proceeding by or on behalf of ASCAP, BMI, SESAC, or other similar licensing organization.

**Insured vs. insured**

16. brought by or on behalf of one **insured** or **affiliate** against another **insured** or **affiliate**.

**Intentional acts**

17. based upon or arising out of any actual or alleged fraud, dishonesty, criminal conduct, or any knowingly wrongful, malicious, or intentional acts or omissions, except that **we** will pay **claim expenses** until there is a final adjudication establishing such conduct.

This exclusion will apply to the **named insured** only if the conduct was committed or allegedly committed by any:



## Digital Media Liability Coverage Part

a. partner, director, officer, or member of the board (or equivalent position) of the **named insured**; or

b. employee of the **named insured** if any partner, director, officer, member of the board (or equivalent position) of the **named insured** knew or had reason to know of such conduct by the employee.

This exclusion will apply separately to each **insured** and will not apply to any **insured** who did not commit, participate in, acquiesce to, or ratify such conduct committed by another **insured**.

| | | |
|---|---|---|
| License/royalties | 18. | based upon or arising out of any actual or alleged obligation to pay any licensing fee or royalty. |
| Manufacture or design of goods/products | 19. | based upon or arising out of any goods or products designed, manufactured, sold, handled, or distributed by **you**. |
| Misappropriation of funds | 20. | based upon or arising out of the actual or alleged theft, misappropriation, commingling, or conversion of any funds, monies, assets, or property. |
| Network security | 21. | based upon or arising out of any actual or alleged failure of computer security, including but not limited to the: |

a. transmission of malicious software such as a computer virus, worm, logic bomb, or Trojan horse;

b. failure to prevent a denial of service attack;

c. failure to prevent authorized access to any computer system, personally identifiable information, or confidential corporate information held or transmitted in any form; or

d. failure to prevent damage to any third party digital asset.

| | | |
|---|---|---|
| Ownership of content | 22. | based upon or arising out of any actual or alleged disputes with any of **your** present or former directors, officers, trustees, partners, joint venturers, employees, agents, or independent contractors concerning ownership of or the exercise of rights relating to content, material, or services supplied to **you** by any of them. |
| Patent/trade secret | 23. | based upon or arising out of any actual or alleged infringement, use, disclosure, or misappropriation of any patent or trade secret. |
| Pollution/environmental | 24. | based upon or arising out of any actual, alleged, or threatened discharge, dispersal, release, or escape of **pollutants**, including any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **pollutants**. |
| Prior acts/notice/knowledge | 25. | based upon or arising out of any: |

a. **claim** or **potential claim** that was the subject of any notice given under any other policy of which this policy is a renewal or replacement;

b. **claim** or **potential claim** that was the subject of, or is related to, any prior or pending litigation, **claim**, written demand, arbitration, administrative or regulatory proceeding or investigation, or licensing proceeding that was filed or commenced against **you** and of which **you** had notice prior to the **policy period**; or

c. other matter **you** had knowledge of prior to the **policy period**, and **you** had a reasonable basis to believe could result in a **claim**.

However, if this policy is a renewal or replacement of a previous policy **we** issued that provided materially identical coverage, and is part of an unbroken chain of successive policies issued by **us**, the **policy period** referred to in paragraphs b and c, above, will be the policy period of the first such policy **we** issued.

| | | |
|---|---|---|
| Privacy | 26. | based upon or arising out of any actual or alleged: |



## Digital Media Liability Coverage Part

|  |  |  |
|---|---|---|
|  | a. | unauthorized acquisition, access, use, or disclosure of, improper collection or retention of, or failure to protect any non-public personally identifiable information or confidential corporate information that is in **your** care, custody, or control; or |
|  | b. | violation of any privacy law or consumer data protection law protecting against the use, collection, or disclosure of any information about a person or any confidential corporate information. |
| Privacy policy violations | 27. | based upon or arising out of any actual or alleged: |
|  | a. | failure to have or appropriately display a privacy policy; |
|  | b. | failure of **your** privacy policy to comply with any federal, state, local, or foreign statutes, ordinances, regulations, or other laws; |
|  | c. | breach of **your** privacy policy; or |
|  | d. | changing of the terms of **your** privacy policy. |
| Professional services | 28. | based upon or arising out of **your** actual or alleged performance of or failure to perform **professional services** or any other services customarily provided by an architect, engineer, surveyor, physician, surgeon, dentist, or other healthcare provider, accountant, insurance agent/broker, investment advisor, securities broker/dealer, or attorney. |
| Property damage | 29. | based upon or arising out of any actual or alleged **property damage**. |
| Repair/replace/recall | 30. | based upon or arising out of any actual or alleged repair, upgrade, correction, recall, replacement, withdrawal, removal, or disposal costs incurred by **you** or others. |
| Scareware | 31. | based upon or arising out of any actual or alleged provision or transmission of Scareware, including but not limited to software that produces false or alarming warning messages. |
| Sexual misconduct | 32. | based upon or arising out of any actual, alleged, or threatened abuse, molestation, harassment, mistreatment, or maltreatment of a sexual nature, including the negligent employment, investigation, supervision, training, or retention of a person who commits such conduct, or the failure to report such conduct to the proper authorities. |
| Software copyright | 33. | based upon or arising out of any actual or alleged copyright infringement related to software or source code. |
| Subsidiary outside control of named insured | 34. a. | based upon or arising out of **media activities** or **advertising** of **professional services** performed by or on behalf of a past or present **subsidiary** while the **named insured** does not have majority ownership or management control of it; or |
|  | b. | made against a **subsidiary** or anyone acting on its behalf while the **named insured** does not have majority ownership or management control of it. |
| Sweepstakes/gambling/ lotteries | 35. | based upon or arising out of any: |
|  | a. | actual or alleged provision of any sweepstakes, gambling activities, or lotteries; or |
|  | b. | price discounts, prizes, awards, money, or valuable consideration given in excess of a total contracted or expected amount, including but not limited to over redemption or under redemption of coupons, discounts, awards, or prizes. |
| Unsolicited telemarketing | 36. | based upon or arising out of any actual or alleged violation of any federal, state, local, or foreign statutes, ordinances, rules, or regulations relating to unsolicited telemarketing, solicitations, emails, faxes, text messages, or any other communications of any type or nature, including but not limited to the Telephone Consumer Protection Act, CAN-SPAM Act, or any "anti-spam" or "do-not-call" statutes, ordinances, rules, or regulations. |
| Virtual currency | 37. | based upon or arising out of any actual or alleged virtual currency, including but not limited to virtual goods exchanged in connection with an Internet game or virtual economy. |



# Digital Media Liability Coverage Part

## VII.  Definitions

The following definitions apply to this Coverage Part. Additional definitions are contained in Section III. Who is an insured, and in the General Terms and Conditions, Section VI. Definitions applicable to all Coverage Parts.

**Advertising**

means the written, printed, online, digital, or electronic promotion of **your professional services**, by **you** or by anyone on **your** behalf acting under **your** control and at **your** specific direction, by broadcast, transmission, dissemination, telecast, cablecast, podcast, streaming, publication, republication, or by use of a website or social media.

**Affiliate**

means any person or entity related to any **insured** through common ownership, control, or management as follows:

1.    any person or entity:

    a.    which wholly or partly owns, operates, controls, or manages the **named insured**;

    b.    which was operated, controlled, or managed by the **named insured**; or

    c.    in which any **insured** has an ownership interest of 15% or more,

    at anytime during or after the performance of the **media activities** or **your advertising** of **your professional services** giving rise to the **claim**; or

2.    any entity for which any **insured** is an officer or director at the time the **claim** is made.

**Affiliate** does not include a **subsidiary**.

**Bodily injury**

means physical injury, sickness, disease, death, humiliation, mental injury, mental anguish, emotional distress, suffering, or shock sustained by a person.

**Claim**

means any written assertion of liability or any written demand for financial compensation or non-monetary relief.

**Claim expenses**

means the following sums incurred in excess of the **retention** and with **our** prior consent:

1.    all reasonable and necessary fees, costs, and expenses (including the fees of attorneys and experts) incurred in the investigation, defense, or appeal of a **claim**; and

2.    premiums on appeal bonds, attachment bonds, or similar bond, but **we** will have no obligation to apply for or furnish any such bonds.

**Damages**

means the following amounts incurred in excess of the **retention**:

1.    a monetary judgment or monetary award that **you** are legally obligated to pay (including pre- or post-judgment interest and awards of claimant's attorney fees); or

2.    a monetary settlement negotiated by **us** with **your** consent.

**Damages** includes punitive damages to the full extent they are insurable under the law of any applicable jurisdiction that most favors coverage.

**Media activities**

means the publication, broadcast, dissemination, or release of **media content** on **your** website or on a social media page owned or controlled by **you** and in connection with **your professional services**.

**Media content**

means the substance of any communication, including but not limited to language, data, facts, fiction, music, photographs, images, artistic expression, or visual or graphic materials, created by **you** or by anyone on **your** behalf.

**Media content** does not include:

1.    the actual goods, products, or services described, depicted, illustrated, or displayed in any communication created by **you** or anyone on **your** behalf;

2.    any content posted or created by any employee in their personal capacity for non-business purposes, whether or not such content is created during working hours or on **your** premises; or



## Digital Media Liability Coverage Part

3.    any reviews, messages, or posts to any website, social media platform, or account by a third party without **your** consent.

**Pollutants**          means any solid, liquid, gaseous, biological, radiological, or thermal irritant or contaminant, including smoke, vapor, asbestos, silica, dust, nanoparticles, fibers, soot, fumes, acids, alkalis, chemicals, nuclear materials, germs, mold, and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned, or reclaimed.

**Potential claim**          means any acts, errors, or omissions of an **insured** or other circumstances reasonably likely to lead to a **claim** covered under this policy.

**Professional services**          means only those services identified as Covered Professional Services under the Digital Media Liability Coverage Part of the Declarations.

**Property damage**          means physical loss of, physical damage to, or destruction or loss of use of any tangible property.

**Retention**          means the amount stated as such under the Digital Media Liability Coverage Part of the Declarations.

**Unfair practices**          means unfair competition, deceptive business practices, or false designation of origin.

**You**, **your**, or **insured**          means a **named insured**, **subsidiary**, **employee**, or **acquired entity**, as defined in Section III. Who is an insured.



# Endorsements

Hiscox Insurance Company Inc.



Endorsement 14

NAMED INSURED: Balgo Teachnologies LLC

**Music Exclusion**                                                                                              Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Digital Media Liability Coverage Part is amended as follows:

The following exclusion is added to the end of Section VI. Exclusions – What is not covered:

Music          MU-1.          based upon or arising out of any actual or alleged infringement of any intellectual property right in or use, disclosure, or misappropriation of music in any form.

Endorsement Effective:  November 2, 2023                              Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-MED E3004 CW (04/19)

Hiscox Insurance Company Inc.



Endorsement 15

NAMED INSURED: Balgo Teachnologies LLC

**Florida Amendatory Endorsement**                                                                Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Digital Media Liability Coverage Part is amended as follows:

I.   In Section VII. Definitions, the sentence at the end of the definition of **"Damages"** regarding the insurability of punitive damages is deleted in its entirety and replaced with the following:

     **Damages** includes punitive only to the extent:

     1    such damages are insurable under the law of any jurisdiction other than Florida that has a substantial relationship to **name insured**, the **claim** or other covered matter, **us**, or this policy and is most favorable to the insurability of such damages; and
     2    that this policy is construed by a court of competent jurisdiction, or an arbitration panel, pursuant to the laws of any jurisdiction other than Florida.

II.  In Section VII. Definitions, the definition of "**Pollutants**" is deleted in its entirety and replaced by the following:

     **Pollutants**              means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Endorsement Effective:  November 2, 2023                        Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-MED E9216 FL (04/19)

Hiscox Insurance Company Inc.



Endorsement 16

NAMED INSURED: Balgo Teachnologies LLC

**Absolute Opioid Exclusion Endorsement**                                                                     Page 1 of 1

In consideration of the premium charged, and on the understanding this endorsement leaves all other terms, conditions, and exclusions unchanged, it is agreed the Digital Media Liability Coverage Part is amended as follows:

The following exclusion is added to the end of Section VI. Exclusions – What is not covered:

Opioids      OP-1.          based upon or arising out of any **advertising** or **media activities** involving in any way any opioid, opioid product, or product derived from opium or opiates, including but not limited to any liability arising out of the use, sale, promotion, manufacture, distribution, delivery, transport, handling, labeling, design, transfer, or possession of any opioid, opioid product, or product derived from opium or opiates.

Endorsement Effective:  November 2, 2023                              Policy No.:  P102.552.460.1

By: Kevin Kerridge
(Appointed Representative)

CYBCL-MED E3007 CW (04/19)



# Application Summary



**Hiscox Insurance Company Inc.**

# Application Summary

The following outlines the details you have given us about your business. We have relied on the accuracy of this information in order to issue your policy. If any of the items below are incorrect or have changed, please call us at so that we can update your policy details.

## Your policy

| | |
|---|---|
| Policy number: | P102.552.460.1 |
| Quote reference number: | Q102.552.460.001 |
| Product: | Cyber Data Liability |
| Business name: | Balgo Teachnologies LLC |
| Business address: | 37 N Orange Ave<br>Ste 608 |
| City: | Orlando |
| State: | FL |
| Zip code: | 32801 |
| County: | Orange |
| Name: | Carlita Nair |
| Email address: | Balgotechnologies@gmail.com |
| Telephone number: | 407-780-9673 |
| Per claim limit of liability: | $ 1,000,000 |
| Aggregate limit of liability: | $ 1,000,000 |
| Deductible: | $ 10,000 |
| Revenue: | ▬▬▬▬ |
| When would you like your policy to start? | November 2, 2023 |

## Your business

| | |
|---|---|
| Class of Business: | Website design |
| Your business's ownership structure | Limited Liability Company |
| Other than the business address provided above, how many additional locations does your business own and rent? | 0 |
| Including yourself, how many full-time, part-time, and temporary employees does your business have? (Do not include subcontractors.) | 3 |
| Do you conduct annual training for employees with respects to privacy matters? | Yes |



**Hiscox Insurance Company Inc.**

## Statements About Your Business

| | |
|---|---|
| As the individual completing this transaction, you are authorized to purchase and bind this insurance on behalf of the entity applying for coverage. | Agree |
| Your business is not controlled or owned by any other firm, corporation, or entity. | Agree |
| For the entire period of time that you have owned and controlled the business, you have not sold, purchased or acquired, discontinued, merged into or consolidated with another business. | Agree |
| Your business has never had any commercial insurance cancelled or rescinded. | Agree |

## Claims and Loss History

| | |
|---|---|
| Based upon your knowledge and the knowledge of your business's current and past partners, officers, directors and employees, you have never been the subject of an inquiry, investigation, or action by any regulatory body or administrative agency related to privacy, cyber breach, business interruption, or data and network exposures. | Agree |
| Based upon your knowledge and the knowledge of your business's current and past partners, officers, directors and employees, during the last five years a third party has never made a claim against your business and you do not know of any reason why someone may make a claim related to privacy, cyber breach, business interruption, or data and network exposures. | Agree |
| Based upon your knowledge and the knowledge of your business's current and past partners, officers, directors and employees, during the last five years you have not experienced any loss related to privacy, cyber breach, business interruption, or data and network exposures. | Agree |

## Cyber Liability

The limits of liability represent the total amount available to pay judgments, settlements, and claim expenses (e.g., attorney's fees) incurred in the defense of any claims. We are not liable for any amounts that exceed these limits.

This is a claims-made policy. If coverage is provided, it shall apply to claims made against you and reported to us during the policy period or applicable extended reporting period.

Judgments, settlements and claims expenses incurred are subject to the deductible amount. The deductible is the amount you must pay before we will make any payments under the policy. Some coverage may not be subject to a deductible, in which case you are not required to make payments before any payments are made under the policy. Please consult the policy language for details.

If you have knowledge of any circumstance that may lead to a claim being made against you, coverage will be excluded if such claim is made.

Claims made against you prior to the inception of the policy are excluded.



**Hiscox Insurance Company Inc.**

## Fraud Warning

Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

| Producer name: | Hiscox Inc. |
|---|---|
| Producer license number: | L036298 |

## Policy Cancellation Statement

You have 14 days from inception of your policy/policies to review your documents. If you have no losses or reported claims, you have the right to cancel back to inception for a full refund.

## Other General Confirmation Statements

| **Optional Terrorism**<br>You have elected to purchase optional terrorism coverage. | Yes |
|---|---|
| **Media Coverage**<br>You have elected to purchase optional Digital Media Liability Coverage | Yes |
| <ul><li>You can receive your policy documents and important notices, including cancellation and nonrenewal notices, in electronic or paper form.</li><li>We will send documents by email or US mail to the address you have provided. You must notify us if your email or street address changes.</li><li>For electronic documents, you will need a computer with Internet access and the ability to receive external emails; software such as Adobe Reader® to view and save PDF documents; and a printer to create paper copies.</li><li>You can always withdraw your consent to receive documents by email. We will then send documents to you by US mail at no added cost.</li><li>To update your email or street address, or to request paper documents, you can contact us at .</li></ul> | Agree to receive policy documents by email<br>Agree to receive important notices by email |

You have confirmed that you agree with the General Statement provided.

I have read the information above and confirm it is correct. I understand that by checking this box and providing the premium payment I agree that I am entering into a binding agreement with Hiscox Insurance Company Inc.

| Producer name: | Hiscox Inc. |
|---|---|
| Producer license number: | L036298 |